# EXHIBIT A

ID# 2020-0105987-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

20106125

C. LaTain Kell Sr. - 49
SEP 30, 2020 04:43 PM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| RANDSTAD TECHNOLOGIES, LLC, | ) |
| | ) |
| **Plaintiff,** | ) CIVIL ACTION |
| | ) |
| v. | ) FILE NO. _____ |
| | ) |
| LISETTE ROBLES, | ) JURY TRIAL DEMANDED |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Randstad Technologies, LLC ("Randstad") files this Complaint for Injunctive Relief ("Complaint") against Defendant Lisette Robles ("Robles").

### INTRODUCTION

1.       This is an action by Randstad, a Cobb County business, for injunctive relief arising out of Robles' ongoing and imminent scheme to unfairly compete against Randstad.  In this lawsuit, Randstad seeks to enforce an Employee Non-Competition and Confidentiality Agreement that multiple Georgia courts, including the Superior Court of Cobb County, have found to be enforceable and to prevent Robles (a former Randstad Account Manager) from violating her restrictive covenant obligations to Randstad.

2.       On September 8, 2020, Robles abruptly announced that she was resigning her employment as an Account Manager, National Strategic Organizations. When her supervisor asked her where she was going to work, she refused to identify her new employer.

3.       Randstad has recently discovered that Robles accepted a position with Beacon Hill Staffing Group, LLC ("Beacon Hill"), a direct competitor to Randstad that is seeking to open a

National Strategic Organization office in Phoenix, Arizona. In a clear-cut violation of her Agreement, Robles is working for Beacon Hill in the same territory and performing the same duties she performed for Randstad prior to her resignation and, on information and belief, is doing so for some of the same clients.

4.     Indeed, Randstad's concerns were heightened when, just days after Robles abruptly resigned, a client Robles managed, Client A,[1] unexpectedly suspended its work with Randstad on a project managed by Robles.

5.     Robles' conduct represents a blatant disregard of her restrictive covenant obligations to Randstad and presents a serious threat of irreparable harm.  Accordingly, Randstad seeks injunctive relief to prevent the immediate irreparable harm that arises from this unfair competition.

## PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff Randstad is a Delaware limited liability company with a corporate office and principal place of business located at One Overton Park, 3625 Cumberland Blvd SE, Atlanta (Cobb County), GA 30339.  Randstad is registered to conduct business in Georgia.

7.     Defendant Robles is an individual who resides at 1319 West 12th Street, Tempe, Arizona 85281.  Until her abrupt resignation on September 8, 2020, Robles served as an Account Manager, National Strategic Organizations.  Robles is subject to the jurisdiction of this Court under the authority of O.C.G.A.§§ 9-10-91 and pursuant to the exclusive jurisdiction and venue provision in her Employee Non-Competition and Confidentiality Agreement with Randstad ("Agreement"). A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

---

[1] Randstad is not publicly identifying Client A to avoid disclosing confidential information, including customer names and contact information. Randstad is willing, however, to identify Client A by submitting this information under seal or after entry of a protective order.

8.     This Court has jurisdiction over the subject matter of this Complaint because Randstad exclusively seeks injunctive relief. *See* O.C.G.A. § 15-6-8. Randstad is not seeking any form of money damages in this Complaint.

9.     Venue is proper in this Court pursuant to the exclusive venue provision in the Agreement because Robles is a party to an Agreement where she agreed to waive any objections to venue in Cobb County, Georgia.

## FACTS

### A.     *Randstad's Business and Confidential Information.*

10.     Randstad is a leader in the staffing solutions industry.  Randstad and its affiliates provide individual employees ("Talent") to a diverse portfolio of businesses and organizations ("Customers") nationwide on a temporary or permanent basis to meet the Customers' needs. Randstad Technologies specializes in placing temporary employees in information technology ("IT") positions in a variety of industries. The National Sales Organization ("NSO") group at Randstad focuses on large institutional clients with significant staffing needs.

11.     The staffing industry is a highly competitive, specialized business that is relationship-driven between Customers, Talent, and the sales force.  Through decades of hard work, dedication, innovation and investment, Randstad has become a leader in the staffing industry.

12.     Randstad invests heavily in developing and maintaining Customer relationships and in attracting and retaining top employees and Talent for both its internal operations and for assignments with its Customers.

13.     Randstad's success in the highly competitive staffing industry is directly dependent on its staffing teams' Customer and institutional knowledge and Randstad's ability to provide top

3

quality Talent to its Customers, and top quality job placements to its Talent.

14.     To meet its Customers' expectations and needs, Randstad has developed and maintained, at great expense, valuable and long-standing working relationships and substantial goodwill with its Customers.

15.     Randstad has reasonably come to expect that its long-standing Customer relationships will continue into the future.

16.     Randstad's employees, including Robles, receive substantial training, information, business contacts, and other advantages that provide Randstad with a competitive advantage in the marketplace.

17.     Until her resignation on September 8, 2020, Robles served as Account Manager, National Strategic Organizations for Randstad, and had high-level responsibility for developing, implementing, and managing Randstad's business and sales strategies in large institutional clients, including Client A, as well as a select number of smaller organizations.

18.     In her role at Randstad, Robles gained unique knowledge of and had access to Randstad's trade secrets and other confidential and proprietary information, including, without limitation, information relating to Randstad's business strategies, finances, methodologies, processes, operations, pricing, Customers, Talent and employees ("Confidential Information").

19.     The Confidential Information to which Robles had access during her employment with Randstad is critical to Randstad's competitive position in the staffing industry.

20.     Randstad developed such Confidential Information at significant expense and effort over a number of years, such information is not generally available to the public or Randstad's competitors, and Randstad derives economic value from this information.

21.     Randstad also takes reasonable efforts to maintain the confidentiality of such information, including having its employees with access to such information sign confidentiality agreements and using password protected computers and password protected log-ins to Randstad's databases.

22.     If Randstad's Confidential Information were to fall into the hands of a competitor, such as Beacon Hill, Randstad's competitive position would be severely harmed, and the competitor would be able to trade on many years' worth of valuable accumulated knowledge. Likewise, if a former employee, such as Robles, retained Plaintiff's Confidential Information after her employment ended and/or used the Confidential Information while working for a competitor, Randstad's competitive position would be seriously harmed and both Robles and the competitor would have an unfair competitive advantage.

**B.**     ***Robles's Employment with Plaintiff, Access to Randstad's Confidential Information, and Development of Goodwill***

23.     Robles joined Randstad as an Account Manager in January 2018, selling Randstad's services to clients in the Phoenix valley area. She initially focused on mid-market accounts before transitioning to the NSO team, where she had responsibility for growing existing accounts, developing and maintaining relationships with existing IT leaders, and executing on Randstad's strategies and business priorities. In this role, she developed and maintained relationships with specific customers, including Client A.

**C.**     ***The Agreement***

24.     On January 9, 2018, Robles executed the Agreement.

25.     Among other provisions, the Agreement provides in Section 3(a):

> You acknowledge that Confidential Information and Trade Secrets are valuable, special and unique assets of Randstad's business. In the course of your employment with Randstad, Randstad will disclose to you and grant you access to Confidential Information and Trade Secrets, and you desire

to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by Randstad. In consideration of Randstad's entrusting to you certain of its Confidential Information and Trade Secrets, you shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of you or any person or entity other than Randstad for any purpose whatsoever (i) at any time during your employment with Randstad, and (ii) after your separation from employment with Randstad (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. You acknowledge that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to Randstad.

26.     The Agreement also provides in pertinent part in Section 4(d):

During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

        (i) providing products or services competitive with the Business of the Company;

        (ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

        (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

        (iv) engaging in responsibilities in which you would utilize or disclose Confidential Information.

27.     The Agreement also includes non-solicitation restrictions in Section 4(a):

During your employment with Randstad and the eighteen (18) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad:

(i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of Randstad with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(ii) contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with Randstad, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv) hire any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for any person or entity that competes with the Business of the Company.

28.    The Agreement further provides in Section 6:

You acknowledge that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of Randstad, whether or not they contain Confidential Information or Trade Secrets, and all Randstad-owned equipment which may be provided for your use while employed by Randstad, are and shall continue to be the property of Randstad. You shall return to Randstad all such documents and equipment in your possession or control immediately upon the date of your separation of employment with Randstad or sooner if requested by Randstad.

29.    Moreover, the Agreement provides in Section 8:

You acknowledge that Randstad will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by Randstad of its benefits or rights under this Agreement as the result of a breach, default or violation by you of any of your obligations under this Agreement. Accordingly, Randstad shall be entitled, in addition to all other remedies which may be available to it (including

monetary damages), to injunctive and other available equitable relief to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by you of any provision of this Agreement or to enforce any such provision. Randstad will not be required to post any bond as a condition of receiving such injunctive relief, and you hereby specifically waive the right to request or require the posting of a bond as a condition of Randstad receiving injunctive relief.

30.     The Agreement is governed by the laws of the State of Georgia.  (*See* Agreement at ¶ 12.)

31.     Robles and Randstad also agreed that:

Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. You and Randstad waive any objection based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

(*See id.*)

**D.      *Robles's Abrupt Resignation from Randstad and Breach of the Agreement***

32.     On September 8, 2020, Robles suddenly and unexpectedly announced that she was resigning her employment with Randstad for family reasons, effective immediately.

33.     Robles' supervisor, in an effort to retain Robles and assist her with any family-related issues she may be having, asked her whether she would be interested in taking leave or discussing potential alternative work arrangements to keep her employed with Randstad. Robles repeatedly declined to elaborate, and instead only reiterated that she needed to resign effective that day.

34.     Her supervisor then asked Robles if she was going to work at Beacon Hill, who is opening a new office in Phoenix.  Robles dodged the question and refused to answer one way or the other.

35.     Additionally, after Robles resigned, she avoided scheduling an exit interview with Randstad and delayed returning her electronic devices to Randstad for a roughly two-week period following her resignation.

36.     Just two days after Robles provided this abrupt notice, and further confirming Pinchera's belief that she was going to Beacon Hill, Randstad learned that Beacon Hill was looking for someone to open an office for Beacon Hill in Phoenix, Arizona. Specifically, Beacon Hill planned to open a division to handle NSO work in Phoenix, and Beacon Hill had already assembled a few employees in Phoenix for this office. Robles is one of the employees who has or will imminently begin working for Beacon Hill's fledgling Phoenix office.

37.     Randstad also has reason to believe that Robles has already solicited one of her clients, Client A, to move its business from Randstad to Beacon Hill. On Friday, September 4, 2020, the last business day before Robles resigned, Robles cancelled a call with her contact at Client A and rescheduled it for Tuesday (after her resignation), saying that she would "bug [her Client A contact] on Tuesday," and ending the e-mail with a very telling smiley-face emoji.

38.     On information and belief, Robles rescheduled this meeting until after she had resigned and joined Beacon Hill to illegally move work with Client A from Randstad to Beacon Hill.

39.     On further information and belief, Robles' tactic succeeded. Just one day after Robles resigned, Client A informed Randstad that it would pause any further placements for the

group previously overseen by Robles for the time being. This was a surprising and abrupt change for a project that Randstad had managed for more than 12 months for Client A.

40.     Robles has accepted a role with Beacon Hill that will necessarily cause Robles to violate her obligations to Randstad.  Indeed, Robles's employment with Beacon Hill is a blatant violation of the non-compete covenant in Section 4(d) of the Agreement, which expressly prohibits Robles from, among other activities, (i) "providing products or services competitive with the Business of the Company," (ii) "supervising employees or other personnel who provide products or services competitive with the Business of the Company," (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company," and; or (iv) "engaging in responsibilities in which Employee would utilize or disclose Confidential Information."

41.     Robles has also violated her non-solicitation restrictions by soliciting Client A, a client with whom she had material contact while employed by Randstad, for the purpose of providing NSO services to Client A.

42.     Because of Robles's ongoing violations of her Agreement, Randstad is threatened with losing business and the loss of value of its goodwill, customer relationships, and Confidential Information, which cannot be adequately addressed at law.  Money alone cannot make Randstad whole and Randstad continues to be irreparably harmed.  Indeed, Randstad is not seeking money damages in this action.  Rather, Randstad is seeking exclusively equitable relief.

### COUNT I
### Breach of Contract

43.     Randstad repeats and re-alleges Paragraphs 1–42 above, and incorporates them as if fully set forth herein.

44.     Robles entered into a valid and enforceable Agreement.

45.     The covenants contained in the Agreement remain in full force during and after Robles's departure from Randstad, and Robles remains bound by those covenants.

46.     Randstad satisfied all of its obligations under the terms and conditions of the Agreement.

47.     By the acts described above, Robles has breached the Agreement by, among other things, competing against Randstad within the Restricted Territory during the twelve-month period following her departure from Randstad.

48.     As a result of Robles' breaches of the Agreement, Randstad has suffered or will suffer substantial irreparable harm, and is threatened with further irreparable harm for which there is no adequate remedy at law to compensate.

49.     By reason of the foregoing, Randstad requires injunctive relief.  Unless injunctive relief is granted, Randstad will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Randstad prays that this Court enter an Order granting a preliminary and permanent injunction ordering that:

(1)     Robles, along with her agents, employers, and those persons in active concert or participation with her, be enjoined through a preliminary and permanent injunction from violating, or facilitating the violation of, Robles' contractual obligations to Randstad; and

(2)     Robles identify to Randstad any and all Randstad Customers, Talent, and employees whom Robles, or anyone acting on her behalf, has solicited or otherwise contacted since her resignation from Plaintiff, including the name of the Customer, Talent, or employee, the date of the contact, and the method of communication; and

(3)     Robles preserve and refrain from any spoliation of evidence and return all Randstad Property and Confidential Information in her possession, custody or control.

## JURY TRIAL DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES AND COUNTS SO TRIABLE.**

*//Robert C. Stevens*
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Counsel for Plaintiff Randstad Technologies, LLC*

Dated:  September 30, 2020

# EXHIBIT A



Staffing | Professionals | HR Solutions | Inhouse Services

**Employee Non-Competition and Confidentiality Agreement**
*(Not for use in California)*

This Employee Non-Competition and Confidentiality Agreement (this "Agreement") is made and entered into by and between the individual signing this Agreement below ("you") and Randstad, a Delaware limited liability company, with its principal place of business in Atlanta, Georgia.

WHEREAS, Randstad desires to employ or continue employing you and to provide you with valuable training and access to Randstad's Confidential Information and Trade Secrets; and you desire such employment, training and access.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt of which is hereby acknowledged, you and Randstad agree as follows:

1.      **At-Will Employment**.  You acknowledge that your employment with Randstad is at-will and not for any prescribed term, meaning either party may terminate your employment at any time, for any reason (except those reasons prohibited by law), with or without notice and with or without cause.  Your entitlement to compensation ends when your employment terminates for any reason. The parties acknowledge that your duties, compensation, title and responsibilities may change over time; notwithstanding any such changes, you will continue to have access to Randstad's Confidential Information and Trade Secrets and this Agreement, unless modified in writing, shall continue to apply and be valid.

2.      **Definitions**.  For the purposes of this Agreement, the following definitions shall apply:

(a)     "Business of the Company" means the services provided by Randstad, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, payrolling, recruitment process outsourcing, independent contractor assessment and placement, HR and management consulting, managed services, solutions services, or other services that are the same as or substantially similar to the services you provided on behalf of Randstad within two (2) years prior to the date of your separation from Randstad.

(b)     "Confidential Information" means data and information belonging to Randstad (i) relating to the Business of the Company, (ii) which has been disclosed to you or of which you became aware as a consequence of or through your relationship with Randstad, (iii) which has value to Randstad, and (iv) which is not generally known to the public or Randstad's competitors.  Without limiting the generality of the foregoing, "Confidential Information" includes Randstad's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders).  Notwithstanding anything herein to the contrary, the term "Confidential Information" shall not be interpreted to include or mean any data or information that has been voluntarily disclosed to the public by Randstad (except where such public disclosure has been made by you without authorization from Randstad), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

(c)     "Invention" means any discovery (whether patentable or not), development (of a technical nature or not), invention, process, design, method, formula, technique, machine, manufacture, composition of matter, algorithm or computer program, plan, writing, program, and improvement relating to Randstad's business or originating from use of Randstad's resources, which you conceive, devise, develop, reduce to practice, perfect or create, alone or jointly with any other person or entity, during the course of employment with Randstad.

(d) "Material Contact" means any contact between you and a customer, Placement Candidate or Talent (i) with whom or which you dealt on behalf of Randstad; (ii) whose dealings with Randstad were coordinated or supervised by you; (iii) about whom you obtained Confidential Information in the ordinary course of business as a result of your association with Randstad; or (iv) who receives products or services authorized by Randstad, the sale or provision of which results or resulted in compensation, commissions, or earnings for Randstad within two (2) years prior to your separation from employment with Randstad.

(e) "Personal Information" consists of a person's first and last name (or first initial and last name), plus one or more of the following: (i) Social Security number; (ii) driver's license number or state-issued identification card number; (iii) bank account or other financial account number; (iv) credit or debit card number; or (v) (where provided by law) the person's e-mail address.

(f) "Placement Candidate" means (i) any person who was identified by Randstad for placement on an assignment with a customer as of the date of your separation of employment with Randstad or (ii) any person who completed an assignment with Randstad within the twenty-four (24) months prior to the date of your separation of employment with Randstad and is eligible to be placed on assignment with a customer again.

(g) "Prior Invention" means any discovery, invention, process, design, plan, writing, program, or improvement that you (i) have, alone or jointly with others, conceived, developed or reduced to practice prior to the commencement of employment with Randstad and (ii) consider to be your property or a third party's property.

(h) "Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i) a radius of twenty-five (25) miles of any office(s) to which you were assigned or which you managed, during the twelve (12) months prior to the date of your separation of employment with Randstad;

(ii) a radius of twenty-five (25) miles of any office(s) in which you performed services on behalf of Randstad at any time during the twelve (12) months prior to the date of your separation of employment with Randstad;

(iii) a radius of twenty-five (25) miles of any office(s) in which Randstad employed personnel whom you directly or indirectly supervised or managed during the twelve (12) months prior to the date of your separation of employment with Randstad; and

(iv) any region or territory to which you were actually assigned or which you managed during the twelve (12) months prior to the date of your separation of employment with Randstad.

(i) "Talent" means any employee who is placed by Randstad on an assignment with a customer as of the date of your separation of employment with Randstad.

(j) "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar applicable law.

3. **Entrustment and Preservation of Confidential Information and Trade Secrets**.

(a) You acknowledge that Confidential Information and Trade Secrets are valuable, special and unique assets of Randstad's business. In the course of your employment with Randstad, Randstad will disclose to you and grant you access to Confidential Information and Trade Secrets, and you desire to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by Randstad. In consideration of Randstad's entrusting to you certain of its Confidential Information and Trade Secrets, you shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of you or any person or entity other than Randstad for any purpose whatsoever (i) at any time

during your employment with Randstad, and (ii) after your separation from employment with Randstad (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. You acknowledge that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to Randstad.

(b)     Unless done for and on behalf of Randstad during your employment by Randstad, you will never use or disclose any person's Personal Information which you may learn or acquire at any time during employment with Randstad. Furthermore, you shall at all times take appropriate measures to protect against the loss of, or damage to, Personal Information in your possession or control.

(c)     **Notice of Immunity under the Defend Trade Secrets Act.** The Defend Trade Secrets Act, 18 U.S.C. § 1833(b), provides an immunity for the disclosure of a trade secret to report suspected violations of law and/or in an anti-retaliation lawsuit.

(i)     IMMUNITY. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (1) is made (A) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(ii)     USE OF TRADE SECRET INFORMATION IN ANTI-RETALIATION LAWSUIT. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (1) files any document containing the trade secret under seal; and (2) does not disclose the trade secret except pursuant to court order.

4.     **Restrictive Covenants**. You acknowledge that Randstad has expended substantial amounts of money, time and effort in developing and maintaining its extensive personnel resources, Confidential Information, Trade Secrets, goodwill and relationships with customers, Placement Candidates, Talent and associate (internal) employees. Consequently, you shall devote your best efforts, attention and energies to Randstad's business at all times during your employment. Furthermore, in consideration of Randstad's initial and continuing employment of you, Randstad's provision to you of initial and ongoing training regarding Randstad's business, and Randstad's entrustment to you of Randstad's Confidential Information and Trade Secrets (without such training and entrustment of Confidential Information and Trade Secrets you acknowledge that you could not perform your job duties and responsibilities), you agree as follows:

(a)     During your employment with Randstad and the eighteen (18) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad:

(i)     contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of Randstad with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(ii)     contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(iii)     contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to

the date of your separation of employment with Randstad for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with Randstad, or to accept employment with any person or entity that competes with the Business of the Company; or

        (iv)    hire any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for any person or entity that competes with the Business of the Company.

        (b)    During your period of employment with Randstad, you shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

        (c)    During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, operate, control, or own any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

        (d)    During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

        (i)    providing products or services competitive with the Business of the Company;

        (ii)    supervising employees or other personnel who provide products or services competitive with the Business of the Company;

        (iii)    developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

        (iv)    engaging in responsibilities in which you would utilize or disclose Confidential Information.

    5.    **Disclosure and Assignment of Inventions**.

        (a)    To the fullest extent permitted by applicable law, any Invention, and all intellectual property rights to such Invention, shall be the exclusive property of Randstad. You hereby irrevocably assign to Randstad all rights, title, and interest (including, without limitation, patent rights, trademarks and copyrights) in any Invention. You hereby waive and agree never to assert any rights in any Invention. You agree to promptly and fully disclose to Randstad any Invention, execute any assignment and other written instrument as necessary to grant Randstad complete legal ownership to every Invention, and to do any other acts as may be required for Randstad to patent, copyright, trademark or otherwise protect such Invention and to invest in Randstad the entire right, title and interest in Invention. Except as required by your duties on behalf of Randstad, you shall not use or disclose any Invention to benefit a person or entity other than Randstad, including without limitation a person or entity that competes against Randstad.

        (b)    Notwithstanding subsection (a), you shall retain all ownership rights in any invention excluded from assignment pursuant to applicable law (as described more fully in Exhibit A) and in any Prior Invention you list on Exhibit A. You represent and warrant that Exhibit A includes a complete and accurate list of every Prior Invention claimed by you individually or jointly with others.

6.     **Return of Company Documents and Equipment**.  You acknowledge that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of Randstad, whether or not they contain Confidential Information or Trade Secrets, and all Randstad-owned equipment which may be provided for your use while employed by Randstad, are and shall continue to be the property of Randstad. You shall return to Randstad all such documents and equipment in your possession or control immediately upon the date of your separation of employment with Randstad or sooner if requested by Randstad.

7.     **Freedom to Contract**.  You represent to Randstad that you have the legal right to enter into this Agreement without violating any other employment agreement or consulting arrangement, including any non-competition, non-solicitation or confidentiality agreements (collectively, "Other Contracts"), and that you will not become subject to any Other Contracts in conflict with this Agreement during your employment with Randstad. You further represent that you will not upload to Randstad's systems, disclose to Randstad, or use for Randstad's benefit any trade secrets or confidential information which is the property of any prior employer or other third party.  If you fail to disclose or breach any Other Contracts, Randstad may incur significant legal exposure and expenses.  Accordingly, in the event of any such failure to disclose or breach of Other Contracts, Randstad reserves the right to terminate your employment and to seek all available legal remedies in connection with the breach of the representations set forth in this Section.

8.     **Enforcement and Damages**.  You acknowledge that Randstad will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by Randstad of its benefits or rights under this Agreement as the result of a breach, default or violation by you of any of your obligations under this Agreement. Accordingly, Randstad shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by you of any provision of this Agreement or to enforce any such provision.  Randstad will not be required to post any bond as a condition of receiving such injunctive relief, and you hereby specifically waive the right to request or require the posting of a bond as a condition of Randstad receiving injunctive relief.  You shall reimburse Randstad for all reasonable legal fees and costs it incurs in connection with bringing a successful action to enforce this Agreement.

9.     **Compliance with Policies/Procedure for Complaints**.  You shall comply with all applicable Randstad policies of which you have been made aware, including but not limited to those policies found in the handbook published on the Human Resources Department's page of Randstad Connect or Workplace.  In addition, you shall at all times act in conformity with Randstad's Business Principles (http://www.randstad.com/corporate-governance/our-principles/business-principles), and you acknowledge that you have been apprised of Randstad's Misconduct Reporting Procedure (see link within Business Principles).  In the event that a complaint is warranted under the Misconduct Reporting Procedure, you may visit www.speakupfeedback.eu/web/integrityatrandstad/us or call 1-866-250-6706. In connection with either reporting mechanism, the access code is 42115. You acknowledge that by this Agreement, you have been notified that if you have any questions or concerns about your employment, Randstad's policies or principles, or if you have a complaint of any kind concerning your employment, that you have the right and are encouraged to notify Human Resources at hrsupport@randstadusa.com or 1-877-601-7453.

10.     **Miscellaneous**.

(a)     You acknowledge that your obligations under this Agreement are personal and that you may not assign any of your rights or delegate any of your duties or obligations under this Agreement.  Randstad may assign, without notice to you, its rights and obligations under this Agreement, which shall inure to the benefit of, and shall be binding upon, the successors and assigns of Randstad.

(b)     If, after executing this Agreement, you: (i) are promoted to, assigned to or otherwise assume one or more positions or functions other than or in addition to the position or functions at the time you signed this Agreement, regardless of title, or (ii) are transferred or assigned to or otherwise work for any affiliate,

subsidiary or other division or business unit of Randstad, the terms of this Agreement shall continue to apply with full force and effect.

(c)     You acknowledge that the covenants contained in Sections 3 and 4 are reasonable and essential to protect Randstad's Confidential Information, Trade Secrets, goodwill and its relationships with customers, Placement Candidates, Talent and associate (internal) employees, and that such covenants will not impair your ability to procure subsequent comparable employment.

(d)     This Agreement may be executed in two or more counterparts, all of which together shall constitute a single agreement. A copy, .pdf/.jpg or facsimile shall be treated as an original Agreement for all purposes.

(e)     Each of the covenants and provisions contained in this Agreement is severable and shall be enforceable independently of every other provision. In the event that any provision of this Agreement shall be held to be overly broad in any respect (including, without limitation as to scope, geographic applicability, time period, activity or subject) so as to be unenforceable as written and agreed to by the parties, it is the parties' intention that such provision shall be construed by the appropriate court or arbitrator by limiting or reducing it so as to be enforceable to the fullest extent compatible with the then applicable law, and the parties hereby specifically request that any such court or arbitrator exercise its discretion consistent with this intention.

(f)     If you previously executed other written agreements with Randstad relating to the subject matter of this Agreement, and/or if you later enter into other written agreements that contain provisions similar to the provisions contained in this Agreement, all such provisions shall be interpreted to provide Randstad with cumulative rights and remedies, and the benefits and protections provided to Randstad under each such agreement shall be given full force and effect. No prior or contemporaneous agreement, whether written or oral, shall be construed to change, amend, alter, repeal or invalidate this Agreement.

(g)     A waiver by one party of a breach of this Agreement by the other party shall not be construed as a waiver of any subsequent or similar breach.

(h)     This Agreement may be amended or terminated only by written agreement of both parties.

(i)     Nothing in this Agreement shall relieve you of any duties or obligations you have to Randstad under statutory or common law, which include but are not limited to: fiduciary duties, the duty of loyalty, the duty not to tortiously interfere with business relationships, the duty not to engage in unfair competition, and the duty not to misappropriate any Trade Secrets.

(j)     You acknowledge that Randstad provided you with a copy of this Agreement prior to or concurrent with making an offer of employment, or an offer of change in your job classification, or implementation of a merit increase or other change in your compensation and benefits, and informed you, prior to your execution of this Agreement, that this Agreement is required as a condition of employment with Randstad.

11.     **Agreement Comprehension and Legal Advice**. You represent that you have read this Agreement completely and carefully and that you understand the contents and effect of this Agreement. You further represent that you have had the opportunity to consult with an attorney before voluntarily signing below and have either consulted with an attorney or waived the opportunity to do so.

12.     **Governing Law and Selection of Forum**. This Agreement and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the state of Georgia, without giving effect to provisions thereof regarding conflict of laws. Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be

brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. You and Randstad waive any objection based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

**IN WITNESS WHEREOF**, the parties have signed this agreement as of ___1/9/2018___.

(Date)

**Employee (you):**

_Lisette Robles_
(Signature)

Lisette Andrea Robles
_____
(Print Name)

**Randstad:**

By: _Angela Raughley_

Angela Raughley
HR Operations Manager
_____
(Print Name and Title)

## EXHIBIT A

**List below any Prior Invention, as that term is defined in Section 2 of the Agreement.**

_____

_____

_____

_____

By signing the Agreement, you hereby agree not to incorporate or permit to be incorporated any Prior Invention in any Invention or other work produced for Randstad without Randstad's prior written consent.  If, in the course of employment with Randstad and without Randstad's prior written consent, you incorporate a Prior Invention into work produced for Randstad, you hereby grant to Randstad a nonexclusive, royalty-free, paid-up, irrevocable, worldwide license (with the full right to sublicense) to make, have made, modify, use, sell, offer for sale and import such Prior Invention, to the extent permitted by applicable law.

**Exclusions from the Assignment Provision of Section 5 of the Agreement**:

**For employees in Delaware, Illinois, Kansas, Minnesota, North Carolina and Washington:** Section 5 of the Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of Randstad was used and which was developed entirely on your own time, unless: (1) the invention relates directly to the business of Randstad, or to Randstad's actual or demonstrably anticipated research or development; or (2) the invention results from any work performed by you for Randstad.

**For employees in Utah:** Section 5 of the Agreement does not apply to an invention that is created by you entirely on your own time and is not an "employment invention." An "employment invention" is an invention which is conceived, developed, reduced to practice or created by you (i) within the scope of employment for Randstad; (ii) on Randstad's time; or (iii) with the aid, assistance, or use of any of Randstad's property, equipment, facilities, supplies, resources or intellectual property.

ID# 2020-0105988-CV
⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**

C. LaTain Kell Sr. - 49
SEP 30, 2020 04:43 PM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

# SUPERIOR COURT OF COBB COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER   20106125

$214.00 COST PAID

Randstad Technologies, LLC

_____

**PLAINTIFF**

**VS.**

Robles, Lisette

_____

**DEFENDANT**

### SUMMONS

TO: ROBLES, LISETTE

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Alex Meier**
**SEYFARTH SHAW LLP**
**1075 Peachtree Street, NE**
**Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If this action pertains to a Protective Order, the Answer is to be filed and served on or before the scheduled hearing date attached. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 30th day of September, 2020.**

Clerk of Superior Court

*Rebecca Keaton*
_____
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

Page 1 of 1

ID# 2020-0105989-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**

SEP 30, 2020 04:43 PM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

C. LaTain Kell Sr. - 49

**General Civil and Domestic Relations Case Filing Information Form**

☑ **Superior** or ☐ **State Court of** _Cobb_ _____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** 09-30-2020<br>**MM-DD-YYYY** | **Case Number** 20106125 |

**Plaintiff(s)**

Randstad Technologies, LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

Robles, Lisette

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Meier, Alex     **Bar Number** 282350     **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☑ Contract
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**                    **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____

ID# 2020-0105990-CV
⚏ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**
**C. LaTain Kell Sr. - 49**
**SEP 30, 2020 04:43 PM**

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

DISCLOSURE STATEMENT
CLERK OF SUPERIOR COURT

CASE NUMBER   **20106125**

**Randstad Technologies, LLC**
Plaintiff

Vs.

**Robles, Lisette**
Defendant

## TYPE OF ACTION

- o Divorce without Agreement Attached
- o Divorce with Agreement Attached
- o Domestic Relations
- ☑ Damages Arising out of Contract
- o Damages Arising out of Tort
- o Condemnation
- o Equity
- o Zoning – County Ordinance Violations (i.e., Injunctive Relief-Zoning)
- o Zoning Appeals (denovo)
- o Appeal, Including denovo appeal – excluding Zoning

- o URESA
- o Name Change
- o Other
- o Recusal
- o Adoption

## PREVIOUS RELATED CASES

Does this case involve substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, as any other case filed in this court (Whether pending simultaneously or not)?

- ☑ NO
- o YES – If yes, please fill out the following:

    1. Case # _____

    2. Parties _____

    3. Assigned Judge _____

    4. Is this case still pending?      o   Yes      o   No

    5. Brief description of similarities:

/S/   **Meier, Alex**

Attorney or Party Filing Suit

ID# 2020-0106081-CV
⊕ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**

C. LaTain Kell Sr. - 49
OCT 01, 2020 11:30 AM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO. 2106125** |
| | ) | |
| **LISETTE ROBLES,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Randstad Technologies, LLC ("Randstad"), by and through its attorneys, and pursuant to O.C.G.A. § 9-11-65 and Rule 6.7 of the Uniform Superior Court Rules, moves this Court to enter an order granting the following relief: (1) enjoining Defendant Lisette Robles ("Robles" or "Defendant") and her agents, employer, and others in active concert with her, from competing against Randstad in violation of the terms of her Employee Non-Competition and Confidentiality Agreement ("Agreement"); (2) enjoining Robles from violating any other term of her Agreement; (3) directing Defendant to provide defined information in connection with Randstad's request for immediate injunctive relief; and (4) requiring Defendant to preserve evidence in advance of a hearing on Randstad's impending request for a preliminary injunction.[1]

Randstad's Motion is based on the accompanying Memorandum of Law and all attached exhibits. Randstad requests that the Court grant its motion in its entirety. A proposed order is attached for the Court's convenience.

---

[1] Randstad will contemporaneously provide copies of its filings to Defendant by email, in addition to service by overnight mail.

65942748v.2

Respectfully submitted,

*/s/ Robert C. Stevens*
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056


*Counsel for Plaintiff Randstad Technologies, LLC*

Dated:  October 1, 2020

65942748v.2

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO. 2106125** |
| | ) | |
| **LISETTE ROBLES,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 1, 2020, he caused copies of the foregoing

Plaintiff's Emergency Motion for Temporary Restraining Order to be served on Lisette Robles

by email and mail (overnight delivery specified) at the following addresses:

> Lisette Robles
> larobles@gmail.com
> 1319 W. 12th Street
> Tempe, AZ 85281

> */s/ Robert C. Stevens*
> Robert C. Stevens
> Counsel for Randstad

65942748v.2

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. 2106125** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Randstad Technologies, LLC ("Randstad"), by its attorneys and pursuant to O.C.G.A. § 9-11-65, hereby moves this Court for a Temporary Restraining Order ("TRO") against Defendant Lisette Robles ("Robles").

**I.   INTRODUCTION**

This case presents a quintessential example of why Georgia companies like Randstad need reasonable restrictive covenants to protect them from unfair competition, and why this Court has the power to enjoin violations of such covenants. This emergency request for a temporary restraining order arises from Robles' wrongful conduct as part of her new employment with Beacon Hill Staffing Group, LLC ("Beacon Hill"), a direct competitor of Cobb County, Georgia-based Randstad. This activity clearly violates Robles's Non-Competition and Confidentiality Agreement ("Agreement") with Randstad, an agreement that both federal and state courts in Georgia, including this Court, have previously found to be valid and enforceable. (*See Randstad Technologies, LLC v. Luma,* et al., No. 18106542

(Ga. Super. Ct., Cobb Cty.), attached as **Exhibit 1**; *Randstad General Partner (US), LLC v. Volt Workforce Solutions, LLC*, No. 17108166 (Ga. Super. Ct., Cobb Cty.), attached as **Exhibit 2**; *Randstad Professionals US, LLC v. Joseph Tamberrino,* et al., No. 1:18-cv-940-ELR (N.D. Ga.), attached as **Exhibit 3**.)

As set forth in the affidavits and other evidence submitted to the Court with this Motion, until her sudden and unexpected resignation on September 8, 2020, Robles was responsible for managing the day-to-day operations of projects at several of Randstad's large institutional clients and, through the course of her employment with Randstad, developed valuable customer relationships entirely by virtue of that employment relationship.

Not surprisingly, Robles is subject to narrowly tailored twelve-month non-compete and non-solicit covenant in her Agreement with Randstad. Yet, despite her Agreement, Robles has commenced employment with Beacon Hill, a direct competitor of Randstad, in a location and role that blatantly breaches the non-compete covenant in her Agreement and, upon information and belief, has already solicited her primary customer, Client A,[1] to transfer its business from the very project she oversaw from Randstad to Beacon Hill. That is precisely what the Agreement, which this Court has enforced on several occasions, is intended to protect against.

In light of Robles's employment with Beacon Hill, Randstad filed this action to prevent the immediate irreparable harm that it faces from Robles' unfair competition. Robles has refused to comply with her restrictive covenants and has instead opted to misrepresent the reason for her departure, to accept a competitive position within the restricted area, and to

_____

[1] To preserve the confidentiality of its client's identity, Randstad has not identified Client A but is willing to do so by *in camera* submissions or after entry of a protective order.

-2-

solicit at least one customer to move its business, specifically delaying work with Client A until she left Randstad and went to Beacon Hill. Accordingly, unless this Court immediately enjoins Robles, she will continue to unfairly compete against Randstad in violation of her Agreement. Randstad, therefore, seeks this TRO to preserve the status quo pending a hearing on Randstad's anticipated application for a preliminary injunction against Robles.

## II.   FACTUAL BACKGROUND

### A.   Randstad's Business and Legitimate Business Interests

Randstad, based in Cobb County, Georgia, is a leader in the highly competitive and specialized staffing business. (Affidavit of M. Pinchera ("Pinchera Aff.") ¶ 3, attached as **Exhibit 4**.) Randstad and its affiliates provide individual employees ("Talent") to a diverse portfolio of customers on a temporary or permanent basis to meet the customers' needs. (*Id.*) Randstad Technologies specializes in information technology ("IT") positions in a variety of industries. (*Id.* ¶ 3.)

The staffing industry is a highly competitive, specialized business that is relationship-driven between customers, Talent, and the Randstad sales force. (*Id.* ¶ 4.) Through decades of hard work, dedication, innovation, and investment, Randstad has become a leader in the staffing industry. (*Id.*) Randstad's success in the highly competitive staffing industry is directly dependent on its staffing teams' customer and institutional knowledge and Randstad's ability to provide top quality Talent to its customers, and top quality job placements to its Talent. (*Id.* ¶ 5.) Accordingly, Randstad provides its employees with extensive access to its trade secrets and other confidential and proprietary information, including, without limitation, information relating to Randstad's business and sales

strategies, finances, methodologies, processes, operations, pricing, customers, Talent and employees ("Confidential Information"). (*Id.* ¶ 6.)

Because such Confidential Information is critical to Randstad's competitive position in the staffing industry, Randstad takes reasonable efforts to maintain its confidentiality, including requiring employees with access to such information to sign confidentiality agreements, using password protected computers and password protected log-ins to Randstad's databases, and maintaining various written policies to protect its trade secrets and other confidential and/or proprietary information. (*Id.* ¶ 8.)

### B. Robles' Employment with Plaintiff

Robles joined Randstad as an Account Manager in 2018 and initially sold Randstad's services to mid-market clients in the Phoenix, Arizona area. (*Id.* ¶ 10.) Later in 2018, Robles started working in Randstad's larger National Sales Organization ("NSO") group, a business segment focused on targeting and servicing large institutional clients. (*Id.*) While she spent most of her time managing NSO accounts, Robles continued to service several smaller clients that she managed before moving into NSO accounts. (*Id.*) Robles' primary account was Client A, a large institutional client in the medical devices and services field.(*Id.*) Robles performed work for Client A and other Randstad clients in the Phoenix, Arizona area, including at her residence. (*Id.*)[2]

---

[2] Moreover, Robles' residence is located at 1319 W. 12th Street, Tempe, Arizona 85281. This address is within 25 miles of Randstad's Phoenix office, located at 3838 N. Central Ave., Suite 1400, Phoenix, Arizona 85012.

### C.      Robles's Detailed Knowledge of Randstad's Trade Secrets and Other Confidential Information.

Not surprisingly, Robles gained highly detailed knowledge of and had access to Randstad's Confidential Information. (*Id.* ¶ 11.) Indeed, her position with Randstad provided her with regular access to confidential information, including (a) Randstad's marketing strategies, (b) client contact information, (c) growth strategies and methodologies, (d) plans for business and service concepts under development by Randstad, (e) pricing offered to large customers and prospects, (f) sales pitches and proposals, (g) sales strategies, and (h) Talent contact information. (*Id.*)

### D.      Robles' Obligations to Randstad under the Non-Competition and Confidentiality Agreement

In light of Randstad's protectable interests (including its customer relationships, goodwill, and the extensive confidential information that Robles obtained through her employment with Randstad), Robles entered into the Agreement with Randstad on January 9, 2018. (Pinchera Aff. ¶ 12, Ex. A.)

Among other provisions, the Agreement contains a narrowly tailored, twelve-month non-compete covenant stating as follows:

> During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:
>
> (i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which you would utilize or disclose Confidential Information.

(Pinchera Aff. Ex. A, at § 4(d).)[3]

In addition, the Agreement authorizes injunctive relief and other available equitable relief from this Court to prevent any actual or threatened breach, default or violation of the Agreement by Robles, as follows:

You acknowledge that Randstad will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by Randstad of its benefits or rights under this Agreement as the result of a breach, default or violation by you of any of your obligations under this Agreement. Accordingly, Randstad shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to

---

[3] The term "Restricted Territory" is defined in the Agreement as "the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i) a radius of twenty-five (25) miles of any office(s) to which [Robles] was assigned or which [Robles] managed, during the twelve (12) months prior to the date of [Robles'] separation of employment with Randstad;

(ii) a radius of twenty-five (25) mils of any office(s) in which [Robles] performed services on behalf of Randstad at any time during the twelve (12) months prior to the date of [Robles'] separation of employment with Randstad;

(iii) a radius of twenty-five (25) mils of any office(s) in which Randstad employed personnel whom [Robles] directly or indirectly supervised or managed during the twelve (12) months prior to the date of [Robles'] separation of employment with Randstad; and

(iv) any region or territory to which [Robles] was actually assigned or which [Robles] managed during the twelve (12) months prior to the date of [Robles'] separation of employment with Randstad."

(Pinchera Aff. Ex A, at § 2(h).)

injunctive and other available equitable relief to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by you of any provision of this Agreement or to enforce any such provision. Randstad will not be required to post any bond as a condition of receiving such injunctive relief, and you hereby specifically waive the right to request or require the posting of a bond as a condition of Randstad receiving injunctive relief

(Pinchera Aff. Ex. A, at § 8.)

E.   **Robles' Abrupt Resignation from Randstad and Employment with Beacon Hill in Breach of the Agreement**

On September 8, 2020, Robles suddenly and unexpectedly announced that she was resigning her employment with Randstad for family reasons, effective immediately. (*Id.* ¶ 13; Affidavit of Jeff Panning ("Panning Aff." ¶ 5, attached as **Exhibit 5**.) Marcus Pinchera, Robles' supervisor, in an effort to retain Robles and assist her with any family-related issues she may be having, asked her whether she would be interested in taking leave or discussing potential alternative work arrangements to keep her employed with Randstad. (Pinchera Aff. ¶ 14.) Robles repeatedly declined to elaborate, instead only reiterated that she needed to resign effective that day and that she was trying to be professional. (*Id.* ¶ 15.) Pinchera then told her that, based on her sudden resignation without any notice, he believed that she was going to work at Beacon Hill. (*Id.* ¶ 16.) She refused to respond to when Pinchera asked her if she was going to Beacon Hill. (*Id.*)

Later the same day that Robles resigned, Client A abruptly suspended its business with Randstad. (*See id.* ¶ 17; Panning Aff. ¶¶ 6-8.) The following day, Client A informed Randstad that, based on Robles' departure, they would put "everything on hold." (*See id.* ¶ 17; Panning Aff. ¶¶ 6-8) When Randstad attempted to follow up with Client A to explain why Randstad could still satisfactorily perform this work, Client A did not provide an

explanation for the sudden change in planned work and requisitions for talent. (Pinchera Aff. ¶ 18; Panning Aff. ¶ 8.)

Randstad now has reason to believe that Robles told Client A that she was leaving Randstad to join Beacon Hill. On Friday, September 4, 2020, the last business day before Robles resigned, Robles intentionally rescheduled a business discussion about potential placements of talent at Client A to Tuesday September 8—the same day she notified Randstad that she was resigning, effective immediately:

> ---------- Forwarded message ---------
> From: **Lisette Robles** <lisette.robles@randstadusa.com>
> Date: Fri, Sep 4, 2020 at 7:53 AM
> Subject: Re: Details
> To: Biondino, Matt (2) <Matt███████@CLIENT A
>
> Disregard. I'll bug you on Tuesday. :)
>
>
> **Lisette Robles**
>
> Account Manager; National Strategic Organization

(Pinchera Aff. Ex. B.)

Tellingly, on Tuesday, after Robles' resignation, Client A immediately informed Randstad that it could not see how Randstad could retain this business   its work with Randstad on the business managed by Robles. (Panning Aff. ¶ 6.) Client A made it official the following day. When Randstad attempted to retain Client A's work in this project, the client contact at Client A said that he was "sad Lisette is no longer with the company, but everyone needs to grow." (Panning Aff. Ex. A.) The client contact then said that Randstad's work on this project would be put "on hold" and that they could "move forward" with work

outside this project that Robles was managing. (*Id.*) Client A has since failed to respond to follow-up messages from Randstad about this project. (*See id.* ¶ 8; Pinchera Aff. ¶ 18.)

The reason for this is that, on information and belief, Robles is now servicing Client A at Beacon Hill, a Randstad competitor that previously has not had a presence in the Phoenix, Arizona area. (Pinchera Aff. ¶¶ 20-21.)  In fact, Beacon Hill does not currently have an official office that services NSO accounts in Phoenix. (*See id.*) However, Beacon Hill is actively attempting to lay the foundation for that office by hiring not only Robles but other Randstad employees in the Phoenix area. (*See id.*)

This pattern of conduct is consistent with Beacon Hill's behavior in other markets. Beacon Hill attempts to hire people regardless of whether they have a non-compete agreement or whether employment with Beacon Hill would violate that agreement. (*See* J. Panning ¶¶ 10-11.) Beacon Hill instructs the new employee to suddenly resign and tell their clients that they are leaving for a "growth opportunity" and then leave without any notice or explanation as to where they are going. (*Id.* ¶ 11.) Beacon Hill advises the new employee to follow up with major customers once they have settled into the new role. (*Id.* ¶12.) These tactics allow Beacon Hill to illegally acquire customer relationships, goodwill, and premier talent in the marketplace.

Robles followed this strategy to the letter. To obscure her relationship with Beacon Hill, Robles falsely told Randstad that she was resigning for family reasons, refused to tell Randstad where she was going to work, and did not update her LinkedIn profile to identify her actual employer. (*See* Pinchera Aff. ¶¶ 13-16, 21.) Her omissions and misrepresentations serve only to confirm that she is aware that her conduct is improper and a violation of her

Agreement.  Indeed, her main customer, the customer whom she said she "would bug on Tuesday" with a smiley face emoji, ceased working with Randstad on the project she was managing within hours of her abrupt resignation. (*See* Pinchera Aff. Ex. B; Panning Aff. ¶¶ 5-8.) Despite her efforts to hide her actions, Randstad confirmed on September 30, 2020 that Robles is working for Beacon Hill. (Panning Aff. ¶ 9.) As a result of Robles' misconduct, Randstad has been forced to initiate this suit to protect its goodwill and customer relationships.

## III.  ARGUMENT AND CITATION OF LEGAL AUTHORITY

The purpose of a TRO pursuant to O.C.G.A. § 9-11-65 is to preserve the status quo while a case is pending. *Grossi Consulting, LLC v. Sterling Currency Grp.,* 290 Ga. 386, 388, 722 S.E.2d 44, 46 (2012). A party may obtain entry of a TRO if it can show the court: (1) it has a likelihood of ultimate success on the merits of its underlying claim; (2) there is a substantial threat it will suffer immediate and irreparable injury that has no adequate remedy at law if the injunction is denied; (3) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; and (4) granting the interlocutory injunction will not disserve the public interest. *Mitchell v. DeKalb Cty. Bank*, 139 Ga. App. 562, 228 S.E.2d 746, 747 (1976); *SRB Inv. Servs., LLP v. Branch Banking Tr. Co.*, 289 Ga. 1, 5 , 709 S.E. 2d 267, 271 (Ga. 2011).

Randstad seeks a TRO for Robles's breach of her contractual obligations to Randstad. As explained below, Randstad is entitled to the injunctive relief it seeks because: (a) Randstad has more than a sufficient likelihood of success on the merits of its claims; (b) Randstad faces the prospect of immediate irreparable injury for which Randstad has no

adequate remedy at law if Robles is not immediately enjoined; (c) the threatened injury to Randstad far outweighs any threatened harm to Robles if the TRO is issued; and (d) granting the TRO will not disserve the public interest. Accordingly, Randstad is entitled to a TRO immediately enjoining Robles as set out in the Proposed Temporary Restraining Order enclosed with this Motion.

**A.** **Randstad Has a More Than Reasonable Likelihood of Success on the Merits.**

**1.** **Randstad is Substantially Likely to Prevail on its Claim for Breach of Contract.**

Randstad is substantially likely to prevail on its breach of contract claim against Robles because the non-compete covenant is demonstrably valid and enforceable under Georgia's restrictive covenants statute, O.C.G.A. §§ 13-8-50 to 59, which governs the Agreement, and Robles is in blatant breach of this covenant and her non-solicit covenant.[4] In enacting the restrictive covenants statute, the General Assembly expressly found that "reasonable restrictive covenants contained in employment and commercial contracts serve the legitimate purpose of protecting legitimate business interests and creating an environment that is favorable to attracting commercial enterprises to Georgia and keeping existing businesses within the state." O.C.G.A. § 13-8-50. Here, the covenants in the Agreement are precisely the types of covenants that the General Assembly authorized to protect Georgia businesses like Randstad from unfair competition.

---

[4] Georgia's restrictive covenants statute applies to all restrictive covenants executed on or after the effective date of the statute, May 11, 2011. *In re Pervis,* 512 B.R. 348, 373 (Bankr. N.D. Ga. 2014)

### a.      The Agreement is Valid and Enforceable.

The Agreement prohibits Robles from, among other things, engaging, for one year after her separation from Randstad, in activities competitive with Randstad, including (i) "providing products or services competitive with the Business of the Company [as defined in the Agreement]," (ii) "supervising employees or other personnel who provide products or services competitive with the Business of the Company," (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company," and; or (iv) "engaging in responsibilities in which [Robles] would utilize or disclose Confidential Information."[5] (Pinchera Aff. Ex. A, § 4(d)(i)-(iv).) This covenant is demonstrably enforceable under Georgia law, which upholds restraints on competition are enforceable as long as the restrictions protect legitimate business interests and are reasonably limited in time, geographic area, and scope of the prohibited activities. *See* O.C.G.A. § 13-8-53(a); *Cellairis Franchise, Inc. v. Duarte*, No. 2:15-cv-00101-WCO, 2015 WL 6517487, at *5 (N.D. Ga. Oct. 21, 2015); *CSM Bakery Solutions, LLC v. Debus*, Case No. 1:16-cv-03732-TCB, 2017 WL 2903354, at *2 (N.D. Ga. Jan. 25, 2017). The non-compete covenant at issue meets all of these requirements, and Randstad's restrictive covenants have repeatedly been enforced by this Court and other courts in this State. (*See* Orders Granting TROs or Injunctions, Exs. 1-3.)

---

[5] The Agreement also has a non-disclosure covenant prohibiting Robles from reproducing, using, disclosing or misappropriating Randstad's Confidential Information for two years after her employment with Randstad, and from disclosing or misappropriating Randstad's trade secrets for as long as the information remains a trade secret under applicable law. (Pinchera Aff. Ex. 1, § 3(a).) Georgia law allows for the protection of confidential information or trade secrets so long as the information remains confidential or continues to be trade secret. *See* O.C.G.A. § 13-8-53(e). Accordingly, like the non-compete covenant, the non-disclosure covenant is valid and enforceable.

First, Randstad has numerous legitimate business interests for which the restrictions in the non-compete are reasonably necessary. As noted above, Randstad has multiple legitimate business interests in Robles' employment as an Account Manager at Randstad, including customer goodwill, substantial relationships with specific customers, and trade secrets and Confidential Information regarding the accounts over which she had responsibility. (*See* Pinchera Aff. ¶¶ 10-16.) These interests qualify as legitimate business interest under Georgia law and is precisely why Randstad requires employees like Robles to execute non-compete covenants. *See* O.C.G.A. § 13-8-51(9) (listing customer goodwill, relationships with specific customers, and trade secrets and "valuable confidential information that otherwise does not qualify as a trade secret" as legitimate business interests under Georgia law).

Second, as to time, a restraint of two years or less against a former employee is presumed to be reasonable under the statute. O.C.G.A. § 13-8-57(b); *Debus*, 2017 WL 2903354, at *1 (one year non-compete is reasonable). Accordingly, the one-year restriction on competition and solicitation in the Robles Agreement is well within the statutory presumption for reasonableness.

Third, as to geography, the statute does not require any detailed description but provides that fair notice of the maximum reasonable scope of the restraint is sufficient. *Id.* at § 13-8-53(c)(1). As provided in the statute:

> Whenever a description of activities, products, or services, or geographic areas, is required by this Code section, any description that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement, even if the description is generalized or could possibly be stated more narrowly to exclude extraneous matters. In case of a post-employment covenant entered into prior to termination, any good faith estimate of the activities, products, or

services, or geographic areas, that may be applicable at the time of termination shall also satisfy such requirement, even if such estimate is capable of including or ultimately proves to include extraneous activities, products, or services, or geographic areas. The post-employment covenant shall be construed ultimately to cover only so much of such estimate as relates to the activities actually conducted, the products or services actually offered, or the geographic areas actually involved within a reasonable period of time prior to termination.

*Id.* Thus, a geographic territory "which includes the areas in which the employer does business at any time during the parties' relationship, even if not known at the time of entry into the restrictive covenant, is reasonable provided that . . . the total distance encompassed by the provisions of the covenant also is reasonable." *Id.* at § 13-8-56(2); *Duarte*, 2015 WL 6517487, at *6; *Novelis Corp. v. Smith*, No. 1:16-cv-1557-ODE, 2017 WL 1745635, at *6 (N.D. Ga. 2017).

Here, the limited definition of the "Restricted Area," among other things,[6] reflects "the geographic areas actually involved" and is reasonable it is limited to a 25-mile radius of locations where Robles performed services for Randstad or serviced Randstad customers. *See* O.C.G.A. §§ 13-8-53(c)(1), 13-8-56(2). Indeed, non-compete covenants without any geographic restriction have been found to be reasonable under Georgia law where the entity seeking to enforce the covenant was a global company. *See Novelis*, 2017 WL 1745635, at *7 (finding that non-compete provision lacking any geographic restriction was reasonable

---

[6] As noted above, the term "Restricted Territory" is defined in the Agreement to mean the "geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction" of "a radius of twenty-five (25) miles from any office(s)" where "[Robles] was assigned or which Employee managed" or "[Robles] performed services on behalf of Randstad" or "in which Randstad employed personnel whom Employee directly or indirectly supervised or managed" during the 12 months "prior to the date of [Robles'] separation of employment with Randstad." (Pinchera Aff. Ex. A, ¶ 2(f).) The term "Restricted Territory" is also defined to include "any region or territory to which [Robles] was actually assigned or which [Robles] managed during the twelve (12) months prior to the date of [Robles']separation of employment with Randstad." (*Id.*)

because "Novelis' business is global, involving customers and facilities across the globe, and sales within and between four global regions."). Here, of course, the Restricted Territory is defined even more narrowly and specifically tied to Robles's work on behalf of Randstad.

Fourth, as to the scope of prohibited activities, the statute provides that phrases such as "of the type conducted, authorized, offered, or provided . . . or similar language" shall be sufficient. O.C.G.A. § 13-8-53(c)(1). According to the statue, the scope of a restriction is measured by the business of the employer or other person or entity in whose favor the restrictive covenant is given. *Id.* at § 13-8-56(3).

Here, the Agreement prohibits Robles from providing to a competitor like Beacon Hill the same or substantially similar services that she provided to Randstad, including "(i) "providing products or services competitive with the Business of the Company [as defined in the Agreement]," (ii) "supervising employees or other personnel who provide products or services competitive with the Business of the Company," (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company," or (iv) "engaging in responsibilities in which [Robles] would utilize or disclose Confidential Information." (Pinchera Aff. Ex. A, § 4(d)(i)-(iv).) These restricted activities track "the activities actually conducted" by Robles at the time of her resignation and are set forth with considerably more specificity than required by the statute. These are reasonable limitations under the statute. O.C.G.A. §§ 13-8-53(c)(1), 13-8-56(3). Accordingly, the non-competition provision Agreement in this case is valid and enforceable under Georgia law. Indeed, multiple courts, including this Court, have previously found this Agreement enforceable and enjoined departing employees who accepted competitive

employment. (*See* Exs. 1-3 (granting requests for injunctive relief under substantively similar agreements.).)

> **b.     Robles is Violating and/or Imminently Threatening to Violate the Agreement.**

There can be no serious dispute that Robles's employment with Beacon Hill is a blatant breach of the twelve-month non-competition provision in the Agreement. On September 8, 2020, Robles abruptly resigned from her employment with Randstad and joined Beacon Hill, which is a direct competitor of Randstad in the IT staffing industry, all while trying to obfuscate where she was going and why she was leaving. (Pinchera Aff. ¶¶ 13-18, 21.) She is now employed with Beacon Hill, and will no doubt be performing the same or substantially similar duties she performed for Randstad with respect to the "Business of the Company," which the Agreement defines as including "temporary, temporary to hire, direct hire and outsourced placement and staffing services, . . . or other services that are the same as or substantially similar to the services [Robles] provided on behalf of Randstad within two (2) years prior to the date of [Robles]' separation from the Company." (*Id.* Ex. A, § 2(a).) It is hard to imagine a more clear-cut violation of the non-compete covenant in the Agreement. Accordingly, Randstad is substantially likely to prevail on its breach of contract claim against Robles.[7]

---

[7] While Robles' clear violation of the non-compete covenant is alone sufficient to warrant a TRO in this case, Robles' employment with Beacon Hill in a role in which she will inevitably make use of her intimate knowledge of Randstad's trade secrets and other Confidential Information is also a breach or threatened breach of the non-disclosure provision in the Agreement, as well as a threatened misappropriation of trade secrets in violation of the Georgia Trade Secrets Act ("GTSA"). Given the nature of Robles' position at Randstad as compared to her new position at Beacon Hill, this Court need not entertain the fiction that Robles can somehow compete directly against Randstad without making use of

The same underlying facts also establish that Robles violated her non-solicit. The same day that Robles provided notice to Randstad, her primary customer relationship, Client A, suddenly and without elaboration paused its work on projects overseen by Robles and has not responded to Randstad's follow-up messages seeking clarification about the reason for the sudden freeze in work on this project. (*See* Pinchera Aff. ¶¶ 17-18; Panning Aff. Ex. A.) This is no coincidence; Client A did not put an immediate hold in work without a plan to requisition this work from another source, and Randstad contends that Client A changed its relationship with Randstad in response to Robles' solicitations. Indeed, Robles specifically delayed work with this client on behalf of Randstad until after she resigned and went to work at Beacon Hill. (*See* Pinchera Aff. ¶¶ 17-18; Panning Aff. ¶¶ 5-8.) Accordingly, Randstad has separately established that Robles violated her non-solicitation covenant.

---

the substantial volume of trade secrets and other Confidential Information with which she is intimately familiar (and particularly confidential information regarding Robles' relationship with Client A). Common sense demonstrates that no person, no matter how well-intentioned, could avoid using such inside information while performing the same duties for a direct competitor. As such, Robles' imminent threat to use and/or disclose the information at issue (including Randstad's confidential business strategies) constitutes both a breach of the nondisclosure covenant and a threatened misappropriation of trade secrets that this Court can and should immediately enjoin. *See, e.g., Essex Group v. Southwire Co.*, 269 Ga. 553, 555, 501 S.E. 2d 501 (1998) (holding that plaintiff's confidential logistics system was trade secret and that threatened misappropriation of trade secret warranted issuance of permanent injunction against defendant); *Sci. Games Int'l, Inc. v. Cash*, No. 2:16-cv-00142-WCO, 2017 WL 542034, at *5 (N.D. Ga. Jan. 25, 2017) (defendant's knowledge of company's trade secrets coupled with conduct of downloading company's files weighed in support of enjoining future or threatened misappropriation); *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102 (3d Cir. 2010) (enjoining the defendant from working for the plaintiff's competitor after the evidence demonstrated that the defendant had access to a significant number of trade secrets); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995) (enjoining the defendant based on the inevitable disclosure doctrine because the defendant "could not be trusted.").

**B.     Randstad Faces the Prospect of Immediate Irreparable Injury for which it has no Adequate Remedy at Law if Robles is not Immediately Enjoined**

Randstad faces the prospect of serious and irreparable harm if Robles are permitted to continue their unlawful acts. Indeed, Georgia appellate courts have long authorized injunctive relief as an appropriate remedy to enforce restrictive covenants. *See, e.g., Poe & Brown of Ga., Inc. v. Gill*, 268 Ga. 749, 750, 492 S.E. 2d 864 (1997) (abuse of discretion to deny injunctive relief on grounds that Randstad had adequate remedy at law where evidence showed defendant violating restrictive covenant). This situation is no different and similar to prior cases where this Court or other Georgia courts entered injunctive relief. (*See Randstad Technologies, LLC v. Luma,* et al., No. 18106542 (Ga. Super. Ct., Cobb Cty.), Ex. 1; *Randstad General Partner (US), LLC v. Volt Workforce Solutions, LLC*, No. 17108166 (Ga. Super. Ct., Cobb Cty.), Ex. 2; *Randstad Professionals US, LLC v. Joseph Tamberrino,* et al., No. 1:18-cv-940-ELR (N.D. Ga.), Ex. 3.)  Although discovery will be needed to develop a fuller picture of Robles' improper activities to date, Robles's breach of the Agreement cannot seriously be disputed.

Moreover, Randstad is seeking only equitable relief in its Complaint without any request for monetary damages or other remedy at law. Of course, even if Randstad were seeking damages, at this early juncture, there is no way to calculate the damages that will result to Randstad's business if Robles is permitted to continue to be employed in a role that places her in direct competition with Randstad in the same territory performing the same duties while armed with Randstad's confidential, non-public sales plans, strategies, and information and with Randstad's customer relationships and accumulated goodwill generated during her employment with Randstad. As the Eleventh Circuit Court of Appeals has

recognized, an injury is "irreparable" if it "cannot be undone through monetary damages." *Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991). There simply is no way to compensate Randstad with monetary damages for the damage that would befall Randstad if Robles is permitted to continue her unfair competition against Randstad. Accordingly, this Court should not wait for Robles to achieve her objective but should immediate enjoin her now.

### C.    The Threatened Injury to Randstad Far Outweighs Any Threatened Harm to Robles if the TRO is Issued

The balance of hardships also decidedly tips in Randstad's favor. If Robles is not enjoined from her unlawful conduct, Randstad faces the very real prospect of irreparable harm to its goodwill and impairment of its customer relationships that it entrusted to Robles. Thus, the only way to prevent irreparable harm and maintain the status quo is through the immediate entry of a temporary restraining order.

In contrast, granting injunctive relief to Randstad will merely prevent Robles from engaging in actions that she is already legally and contractually prohibited from performing. Beacon Hill will not be precluded from continuing to compete against Randstad generally. And Robles will not be prohibited from being gainfully employed in a capacity as long as it is in a role that does not violate her Agreement. Given this reality, the hardships that Randstad will face if injunctive relief is not granted vastly outweigh whatever hardships Robles will face simply by complying with their existing legal obligations.

### D.    The TRO will not Disserve the Public Interest

Finally, the public interest will not be disserved by granting Randstad's request for injunctive relief. As one federal court in this state has observed

Georgia favors enforcing reasonable restrictive covenants. "[R]easonable restrictive covenants ... serve the legitimate purpose of protecting legitimate business interests and creating an environment that is favorable to attracting commercial enterprises to Georgia and keeping existing businesses within the state." Ga. Code Ann. § 13-8-50. Legitimate business interests include inter alia trade secrets, confidential information, substantial relationships with customers and vendors, good will, and specialized training. Ga. Code Ann. § 13-8-51(9). . . . Finally, [the employer] is headquartered in Georgia, has significant investments in Georgia, and employs a substantial number of people in Georgia. Public policy thus favors granting the injunction requested here.

*Novelis*, 2017 WL 1745635. *See also Variable Annuity Life Ins. Co. v. Joiner*, 454 F. Supp. 2d 1297, 1305 (S.D. Ga. 2006) (granting preliminary injunction enforcing restrictive covenants in employment agreement).

This Court should adopt the same reasoning in this action. No public interest will be disserved if the Court grants Randstad's motion for injunctive relief. On the contrary, issuance of a TRO will vindicate this State's public policy in favor of ensuring fair competition and enforcing valid contracts. It will also protect the legitimate business interests of Randstad, a company headquartered in Georgia that has significant investments in Georgia and employs a substantial number of people in Georgia.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Randstad has shown a likelihood of success on the merits of its claims and that it faces the prospect of immediate irreparable injury for which it has no adequate remedy at law if Robles are not immediately enjoined.

WHEREFORE, Randstad respectfully prays that this Court enter a Temporary Restraining Order ordering Robles, including her agents, representatives, employers, and/or anyone else active in concert or participation with them who receives notice of the Order by personal service or otherwise, as follows:

- Enjoining Robles from working for Beacon Hill or from otherwise, directly or indirectly, on Robles' own behalf or on behalf of any person or entity other than Randstad, holding any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the business of Plaintiff in violation of the terms of the Agreement;

- Enjoining Robles from soliciting any customer with whom she had material contact while employed by Randstad, in violation of the terms of the Agreement;

- Ordering Robles to comply with all provisions of the Agreement relating to non-solicitation of Plaintiff's customers and employees and non-disclosure of Plaintiff's trade secrets, confidential and/or proprietary information;

- Ordering Robles to identify (within 7 business days of entry of this Order) any and all Randstad customers, placement candidates, and employees whom Robles, or anyone acting on her behalf, has solicited or otherwise contacted since September 8, 2020, including: (a) the date(s) and time(s) the contact occurred; (b) the name of the person(s) contacted; (c) the method(s) of communication; and (d) a description of what was discussed; and

- Ordering Robles to immediately preserve all data and information in their possession, custody, or control, of any type and however maintained, pertaining to Randstad's business or the allegations set forth in Randstad's Complaint in this action, including, but not limited to, data and information in an electronic format.

No prior application for the relief requested herein has been made to this or any other Court. For the Court's convenience, a Proposed Order is enclosed with this Motion.

Respectfully submitted,


*//Robert C. Stevens*
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056


*Counsel for Plaintiff Randstad Technologies, LLC*

Dated: October 1, 2020

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. 2106125** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on October 1, 2020, he caused copies of the foregoing

Plaintiff's Motion for Expedited Discovery to be served on Robles by email and mail

(overnight delivery specified) at the following addresses:

> Lisette Robles
> Larobles1@gmail.com
> 1319 W. 12th Street
> Tempe, AZ 85281


> */s/ Robert C. Stevens*
> Robert C. Stevens
> Counsel for Randstad

*Exhibit 1*

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

COBB COUNTY, GA
FILED IN OFFICE

2018 AUG 31 PM 2: 24

*Rebecca Keaton*
COBB SUPERIOR COURT CLERK

| | | |
|---|---|---|
| RANDSTAD TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | **FILE NO.** 18106542 |
| | ) | |
| COLLABERA INC. and | ) | **JURY TRIAL DEMANDED** |
| JEFFREY LUMA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ~~[PROPOSED]~~ TEMPORARY RESTRAINING ORDER AND RULE NISI

On August 31, 2018, Plaintiff Randstad Technologies, LLC ("Plaintiff" or "Randstad")

filed a Motion for Temporary Restraining Order (the "Motion"). The Motion is supported by

Randstad's Memorandum of Law, as well as the supporting affidavits of Richard Brown and

Graig Paglieri. The Court heard oral arguments on Randstad's Motion on *August 31*, 2018

(the "Hearing"). Defendants were provided advance notice of the Hearing and given the

opportunity to attend.

The Court believes immediate consideration is appropriate in light of the evidence

presented. After considering all evidence, it appears to the Court from the specific facts shown

that Plaintiff has met the standards applicable to the award of a temporary restraining order. See

Garden Hills Civic Ass'n v. MARTA, 539 S.E.2d 811, 812-13 (Ga. 2000).

IT IS HEREBY ORDERED THAT, pursuant to O.C.G.A. § 9-11-65, from the date of

entry of this Order until the resolution of Randstad's Motion for Preliminary Injunction,

Defendants, including their agents, representatives, employees, and/or anyone else active in

concert or participation with them who receives notice of this Order by personal service or

otherwise, are hereby ordered as follows:

1.      Defendants are enjoined from directly or indirectly accessing, using, disclosing, disseminating or making available Plaintiff's trade secrets or its confidential and/or proprietary information to any person or entity other than Plaintiff;

2.      Defendant Luma is enjoined from working for Defendant Collabera Inc. or from otherwise, directly or indirectly, on Luma's own behalf or on behalf of any person or entity other than Plaintiff, holding any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the business of Plaintiff in violation of the terms of the Executive Non-Competition and Confidentiality Agreement (the "Agreement") attached to this Order as Exhibit A;

3.      Defendant Luma shall comply with all provisions of the Agreement relating to non-solicitation of Plaintiff's customers and employees and non-disclosure of Plaintiff's trade secrets, confidential and/or proprietary information;

4.      Defendant Luma shall deliver (within 7 business days of entry of this Order) to the offices of Plaintiff's counsel, Seyfarth Shaw LLP, located at 1075 Peachtree Street, Suite 2500, Atlanta, Georgia 30309: (i) any computer devices or electronic storage media or devices in his possession, custody, or control that currently or previously contained any of Plaintiff's trade secrets or other confidential or proprietary information, and (ii) any other property of Plaintiff, in any format, in his possession, custody or control;

5.      Defendant Luma shall identify (within 7 business days of entry of this Order) any and all Randstad customers, placement candidates, and employees whom Luma, or anyone acting on his behalf, has solicited or otherwise contacted since July 31, 2018, including: (a) the date(s) and time(s) the contact occurred; (b) the name of the person(s) contacted; (c) the method(s) of communication; and (d) a description of what was discussed; and

6.     Defendants shall immediately preserve all data and information in their possession, custody, or control, of any type and however maintained, pertaining to Plaintiff's business or the allegations set forth in Plaintiff's Complaint in this action, including, but not limited to, data and information in an electronic format.

7.     Plaintiff's Motion for Preliminary Injunction shall be heard by this Court on _September 11th_, 2018 at _11:00_ (a.m.)/p.m. in Courtroom _2000_.

8.     Plaintiff shall serve this Order on Defendants.

IT IS SO ORDERED, this _31st_ day of _August_, 2018, at _1:55_ ~~a.~~/p.m.

_Michael Stoddard_
Judge, Superior Court of Cobb County

MICHAEL STODDARD, SENIOR JUDGE
SUPERIOR COURTS OF GEORGIA
PRESIDING IN COBB JUDICIAL CIRCUIT

48716805v.1

*Exhibit 2*

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| RANDSTAD GENERAL PARTNER (US), LLC, | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | FILE NO. 17108166 |
| VOLT WORKFORCE SOLUTIONS, INC. and LINDA PERNEAU, | ) | |
| Defendants. | ) | |

**[PROPOSED] TEMPORARY RESTRAINING ORDER AND RULE NISI**

On November 13, 2017, Plaintiff Randstad General Partner (US), LLC ("Plaintiff" or "Randstad") filed a Motion for Temporary Restraining Order (the "Motion"). The Motion is supported by Randstad's Memorandum of Law, as well as the supporting affidavits of Kenneth Johnson, Greg Dyer, and Brenda Richard. The Court heard oral arguments on Randstad' Motion on _____, 2017 (the "Hearing"). Defendants were provided advance notice of the Hearing and given the opportunity to attend.

The Court believes immediate consideration is appropriate in light of the evidence presented. After considering all evidence, it appears to the Court from the specific facts shown that Plaintiff has met the standards applicable to the award of a temporary restraining order. See Garden Hills Civic Ass'n v. MARTA, 539 S.E.2d 811, 812-13 (Ga. 2000).

IT IS HEREBY ORDERED THAT, pursuant to O.C.G.A. § 9-11-65, from the date of entry of this Order and until the 30th day after its entry, unless sooner dissolved by this Court, Defendants, including their agents, representatives, employees, and/or anyone else active in concert or participation with them who receives notice of this Order by personal service or otherwise, are hereby ordered as follows:

42025696v.1

FILED IN COURT
THIS ___11/14___ 20 17
AT ___2:54___ P. M
REBECCA KEATON
CLERK SUPERIOR COURT
COBB COUNTY, GEORGIA

Perneau's

1.      Defendants are enjoined from directly or indirectly accessing, using, disclosing, disseminating or making available Plaintiff's trade secrets or its confidential and/or proprietary information to any person or entity other than Plaintiff;

2.      Defendant Perneau is enjoined from working for Defendant Volt Workforce Solutions, Inc. or from otherwise, directly or indirectly, on Perneau's own behalf or on behalf of any person or entity other than Plaintiff, holding any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the business of Plaintiff in violation of the terms of the Executive Non-Competition and Confidentiality Agreement (the "Agreement") attached to this Order as Exhibit A;

3.      Defendant Perneau shall comply with all provisions of the Agreement relating to non-solicitation of Plaintiff's customers and employees and non-disclosure of Plaintiff's trade secrets, confidential and/or proprietary information;

4.      Defendant Perneau shall deliver (within 7 business days of entry of this Order) to an agreed third-party neutral ~~the offices of Plaintiff's counsel, Seyfarth Shaw LLP, located at 1075 Peachtree Street, Suite 2500, Atlanta, Georgia 30309~~: (i) any computer devices or electronic storage media or devices in her possession, custody, or control that currently or previously contained any of Plaintiff's trade secrets or other confidential or proprietary information, and (ii) any other property of Plaintiff, in any format, in her possession, custody or control;

5.      Defendant Perneau shall identify (within 7 business days of entry of this Order) any and all Randstad customers, placement candidates, and employees whom Perneau, or anyone acting on her behalf, has solicited or otherwise contacted since October 25, 2017, including: (a) the date(s) and time(s) the contact occurred; (b) the name of the person(s) contacted; (c) the method(s) of communication; and (d) a description of what was discussed; and

42025696v.1

6. ~~Defendants shall immediately preserve all data and information in their possession, custody, or control, of any type and however maintained, pertaining to Plaintiff's business or the allegations set forth in Plaintiff's Complaint in this action, including, but not limited to, data and information in an electronic format.~~

7. Plaintiff's Motion for Preliminary Injunction shall be heard by this Court on December __, 2017 at _____ a.m./p.m. in Courtroom __.

8. Plaintiff shall serve this Order on Defendants.

IT IS SO ORDERED, this 12th day of ___Nov___, 2017, at _2:55_ a.m./p.m.

_____

Judge, Superior Court of Cobb County

GEORGE H. KREEGER
SENIOR JUDGE, STATE OF GEORGIA
PRESIDING IN COBB JU...

-3-

*Exhibit 3*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| RANDSTAD PROFESSIONALS US, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:18-cv-00940-ELR |
| JOSEPH TAMBERRINO, ERIC HOWSER, and BRYAN WATTS, | ) ) ) | |
| Defendants. | ) ) ) | |

## CONSENT ORDER FOR PRELIMINARY INJUNCTION

On March 8, 2018, Plaintiff Randstad Professionals US, LLC filed its Complaint against Defendants Joseph Tamberrino, Eric Howser, and Bryan Watts. Randstad alleges that Defendants, in the course of leaving Randstad and establishing a competitive business, Veritas Partners, LLC, violated the Defend Trade Secrets Act of 2016 ("DTSA") and their common-law obligations to Randstad. Randstad also alleges that Defendants Howser and Watts breached various restrictive covenants in their employment agreements and that Defendant Tamberrino tortiously interfered with those agreements by facilitating violations of various restrictive covenants. This matter is now before the Court on the parties' Consent Order for Preliminary Injunction as to Defendants Howser and Watts.

Defendants Howser and Watts consent to the entry of this order and state that their consent is given knowingly and voluntarily and that they have had the opportunity to, and have in fact, consulted with their counsel prior to consenting to the relief described in this order.

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, and personal jurisdiction and venue over the parties in this action are also present.

2.    Randstad and Defendants have stipulated and agreed to the entry of this preliminary injunction order without a finding by the Court of law or fact other than stated below. Randstad stipulates that it will not seek to recover its attorneys' fees and costs solely as a result of the entry of this preliminary injunction.

3.    Howser is a former Randstad Executive Recruiter.

4.    Watts is a former Randstad Executive Recruiter.

5.    Tamberrino is a former Randstad National Director to whom Howser and Watts reported.

6.    Randstad is an industry leader in the staffing industry, a highly competitive, specialized business built on customer relationships and decades of institutional knowledge and competitive intelligence.

7.     Randstad has legitimate, protectable business interests in its relationships with its customers, Talent, and employees.

8.     To enable its employees to perform their duties, Randstad provides employees, including Defendants, with access to relevant Confidential Information and trade secrets, such as pricing, customer preferences and hiring needs, branch management, comprehensive financial data, and similar information or compilations of information that derives economic value because it is not generally known.

9.     Randstad takes reasonable measures and precautions to protect its Confidential Information and trade secrets, because Randstad has expended substantial amounts of money, time, and effort in developing and maintaining such information.

10.    Randstad has legitimate, protectable business interests in its Confidential Information and trade secrets.

11.    Howser signed an employment agreement with Randstad on or about July 11, 2016.

12.    Watts signed an employment agreement with Randstad on or about February 1, 2016.

3

13. Section 3 of Howser's and Watts' employment agreements describe their obligations to protect Randstad's Confidential Information and trade secrets. Specifically, Section 3 includes the following restrictions:

(a) [Howser/Watts] acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of [Howser's/Watts's] employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to [Howser/Watts] certain of its Confidential Information and Trade Secrets, [Howser/Watts] shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of [Howser/Watts] or any person or entity other than the Company for any purpose whatsoever (i) at any time during [Howser's/Watts's] employment with the Company, and (ii) after [Howser's/Watts's] separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. [Howser/Watts] acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

14. Defendants agree that Section 3 is a valid and enforceable contractual expression of Randstad's legitimate business interests in protecting its Confidential Information and trade secrets.

4

15.     Section 4 of Howser's and Watts' employment agreements contain restrictive covenants that limit their ability to compete with Randstad and to solicit Randstad's customers, Talent, and employees. Specifically, Section 4 includes the following restrictions:

(a)     During [Howser's/Watts's] employment with the Company and the eighteen (18) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, [Howser/Watts] shall not, directly or indirectly, on [Howser's/Watts's] own behalf or on behalf of any person or entity other than the Company:

(i)     contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of the Company with whom [Howser/Watts] had Material Contact at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;

(ii)    contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom [Howser/Watts] had Material Contact at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;

(iii)   contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of the Company with whom [Howser/Watts] worked at any time during the twelve (12) months prior to the date of [Howser's/Watts's] separation of employment with the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment

5

with the Company, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv) hire any associate (internal) employee of the Company with whom [Howser/Watts] worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for any person or entity that competes with the Business of the Company.

(b) During his or her period of employment with the Company, [Howser/Watts] shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c) During [Howser's/Watts's] employment with the Company and the twelve (12) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, [Howser/Watts] shall not, within the Restricted Territory, directly or indirectly, operate, control, or own any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d) During [Howser's/Watts's] employment with the Company and the twelve (12) month period immediately following the date of [Howser's/Watts's] separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on [Howser's/Watts's] own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

      (ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

      (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

      (iv) engaging in responsibilities in which [Howser/Watts] would utilize or disclose Confidential Information.

16.    Defendants agree that Section 4 is a valid and enforceable contractual expression of Randstad's legitimate business interests in protecting its Confidential Information and trade secrets, its relationships with customers, Talent, and employees, and its customer goodwill in the Baltimore, Maryland market.

17.    Howser's and Watts' employment agreements define the "Restricted Territory" as follows:

      (i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

      (ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

      (iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and

7

(iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

18. The restrictive covenants detailed in Section 4 of Howser's and Watts' employment agreements are reasonable in time, geographic area, and the scope of the prohibited activities. Defendants acknowledge that, in connection with their employment with Randstad, they customarily and regularly solicited, on Randstad's behalf, customers and prospective customers and made sales and performed services on Randstad's behalf.

19. While employed by Randstad, Defendants worked out of Randstad's office located at 120 E. Baltimore Street, Suite 2220, Baltimore, Maryland 21202.

20. Since leaving Randstad, Howser and Watts have joined Veritas Partners, LLC, a Randstad competitor that provides products or services competitive with the Business of the Company, and which has its principal place of business within the Restricted Area, at 16511 York Road, Monkton, Maryland.

21. The parties agree that Randstad has entered into valid and enforceable agreements with Howser and Watts.

22. The parties agree that all restrictive covenant provisions contained in Howser's and Watts' employment agreements are valid and enforceable expressions of Randstad's legitimate, protectable business interests.

8

23.    Randstad asserts that is likely to prevail in its action to enforce the restrictive covenants in Howser's and Watts' employment agreements.

24.    Randstad asserts that, but for the entry of a preliminary injunction, Randstad would suffer irreparable harm to its legitimate business interests, including accrued customer goodwill, the potential dissemination of Confidential Information and trade secrets, and the loss of customer relationships, all of which cannot be remedied through monetary damages.

25.    Randstad asserts that the public and private interests favor entry of a preliminary injunction and recognize that Georgia's public policy finds that "reasonable restrictive covenants contained in employment and commercial contracts serve the legitimate purpose of protecting legitimate business interests and creating an environment that is favorable to attracting commercial enterprises to Georgia and keeping existing businesses within the state." O.C.G.A. § 13-8-50.

26.    The parties agree that Randstad need not post security in any amount in connection with the entry of this order.

27.    Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the parties waive the entry of any further findings of fact and conclusions of law for purposes of this order.

## I.   DEFINITIONS

For purposes of this order, the following definitions apply:

28.   "Business of the Company" is defined as the services provided by Randstad, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, payrolling, recruitment process outsourcing, independent contractor assessment and placement, HR and management consulting, managed services, or other services that are the same as or substantially similar to the services Defendants Watts and Howser provided on behalf of Randstad between January 3, 2016 and January 3, 2018.

29.   "Confidential Information" is defined as data and information belonging to Randstad (i) relating to the Business of the Company, (ii) which has been disclosed to Defendants or of which Defendants became aware as a consequence of or through Defendants' relationship with Randstad, (iii) which has value to Randstad, and (iv) which is not generally known to the public or the Randstad's competitors. "Confidential Information" includes, but is not limited to, the Company's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary

10

requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders). "Confidential Information" does not include any data or information that has been voluntarily disclosed to the public by Randstad (except where such public disclosure has been made by Defendants without authorization from Randstad), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

30.    "Defendants" means and refers to Eric Howser, and Bryan Watts.

31.    "Material Contact" means any contact between Howser or Watts and a customer, Placement Candidate, or Talent (i) with whom or which Employee dealt on behalf of the Company; (ii) whose dealings with the Company were coordinated or supervised by the Employee; (iii) about whom Employee obtained Confidential Information in the ordinary course of business as a result of Employee's association with the Company; or (iv) who receives products or services authorized by the Company, the sale or provision of which results or resulted in compensation, commissions, or earnings for the Company within two (2) years prior to the Employee's separation from employment with the Company.

32.    "Placement Candidate" means (i) any person who was identified by Randstad for placement on an assignment with a customer as of the date of

Defendants' separation of employment with Randstad or (ii) any person who completed an assignment with Randstad between January 3, 2016 and January 3, 2018.

33.  "Randstad" means and refers to Randstad Professionals US, LLC and its parents, subsidiaries, affiliates, shareholders, officers, directors, attorneys, insurers, successors, representatives, agents, employees, predecessors, and assigns.

34.  "Restricted Territory" is defined in Paragraph 16 of this order.

35.  "Restricted Activity" is defined as any conduct described in Paragraph No. 14 of this order that occurs or facilitates the provision of staffing services within the Restricted Territory.

36.  "Talent" means any employee who was placed by Randstad on an assignment with a customer as of January 3, 2018.

37.  All other terms shall be interpreted according to their customary meaning and usage.

## II.  SCOPE OF INJUNCTION

Based on the foregoing, it is therefore ordered that:

38.  Howser and Watts, and all persons acting in the capacity of their agents, servants, employees, successors and assigns, and all persons acting in active concert or participation with Defendants who receive actual notice of such

order are restrained, enjoined, and prohibited, until further order of the Court, from directly or indirectly:

     a.   reproducing, using, distributing, disclosing, publishing, or misappropriating any of Randstad's Confidential Information or Trade Secrets.

     b.   contacting, soliciting, servicing, selling to, or attempting to contact, solicit, service, or sell to any customer of the Company with whom Howser or Watts had Material Contact, or about which Howser or Watts learned Confidential Information, at any time between January 3, 2017 and January 3, 2018 for the purpose of providing services competitive with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

     c.   contacting, soliciting, servicing, placing, or attempting to contact, solicit, service, or place any Placement Candidate or Talent with whom Howser or Watts had Material Contact, or about which Howser or Watts learned Confidential Information, at any time between January 3, 2017 and January 3, 2018 for the purpose of providing services competitive with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

     d.   contacting, recruiting, or soliciting, or attempting to contact, recruit, or solicit any associate (internal) employee of the Company with whom Howser or Watts worked, or about which Howser or Watts learned Confidential Information, at any time between January 3, 2017 and January 3, 2018 for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

     e.   hiring any associate (internal) employee of the Company with whom Howser or Watts worked at any time between January 3, 2017 and January 3, 2018 for any person or entity that competes with the Business of the Company. This restriction is in effect from the date of the entry of this order until January 3, 2019.

f.      operating, controlling, or owning any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity). This restriction is in effect from the date of the entry of this order until January 3, 2019.

g.      holding any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves (i) providing products or services competitive with the Business of the Company; (ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company; (iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or (iv) engaging in responsibilities in which Howser or Watts would utilize or disclose Confidential Information. This restriction is in effect from the date of the entry of this order until January 3, 2019.

For purposes of clarity only, and without limiting this Paragraph 38(g), Howser shall not be allowed to perform any services, solicit or attempt to solicit, do any business with, or make any placements of or for, any actual or prospective customers, Placement Candidates, or Talent within the Restricted Territory in the area of Legal Recruiting, and Watts shall not be allowed to perform any services, solicit or attempt to solicit, do any business with, or make any placements of or for, any actual or prospective customers, Placement Candidates, or Talent within the Restricted Territory in the areas of Legal Recruiting, Banking,  and/or Financial Services.  In addition, neither Howser nor Watts shall be allowed to perform any services, solicit or attempt to solicit, do any business with, or make any placements of or for, any actual or prospective customers, Placement Candidates or Talent within the Restricted Territory who have had material contacts with either Howser or Watts, nor shall they assist or provide any information to Tamberrino or Veritas relating to any actual or prospective customers, Placement Candidates or Talent within the Restricted Territory who have had material contacts with either Howser or Watts.  Nothing herein shall preclude Howser or Watts from working in an office or from their home for Veritas or any other competitor of Randstad within the Restricted Territory, as long as they fully abide by the provisions of this Consent Order by not working in their previous verticals, i.e. legal recruiting for Howser and legal

14

recruiting, banking, and financial services for Watts, and not soliciting or providing services to any of each other's previous customers, Placement Candidates or Talent.

## III.   ADDITIONAL OBLIGATIONS AND STIPULATIONS

39.   Howser and Watts each agree to execute, no later than 14 days from the date of this order, an affidavit certifying that affiant has not had any of Randstad's Confidential Information and/or trade secrets in his possession, custody, or control since January 3, 2018 or, alternatively, identifying such property and stating that he will not access any such information for purposes unrelated to the resolution of this dispute.

## IV.   FORCE AND EFFECT

40.   The injunctive provisions of this order shall be binding on Howser and Watts, upon any person insofar as he or she is acting in the capacity of an agent, servant, or employee of Howser and Watts, and upon any person with actual notice of this order to the extent that he or she is acting in active concert or participation with Howser or Watts.

41.   This order shall remain in effect until further order of the Court, and the injunctive restrictions described in each subsection of Section II shall remain in effect according to the temporal limitation detailed in each subsection.

42.  In the event this case is dismissed, the Court shall retain jurisdiction over this action to ensure compliance with this order and for all other purposes related to this action.

ON BEHALF OF RANDSTAD
PROFESSIONALS US, LLC

By /s/ Erik W. Weibust

By /s/ Alex Meier
Eric Barton
Georgia Bar No. 040704
Alex Meier
Georgia Bar No. 282350
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 885-6772
ebarton@seyfarth.com
ameier@seyfarth.com

Erik W. Weibust (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: 617-946-4800
Facsimile: 617-946-4801
eweibust@seyfarth.com

*Attorneys for Plaintiff*

ON BEHALF OF ERIC HOWSER AND
BRYAN WATTS

By /s/ Andrew Dansicker
*With express permission*
Andrew Dansicker
Law Office of Andrew M. Dansicker, LLC
Executive Plaza II, Suite 705
11350 McCormick Road
Hunt Valley, Maryland 21031
(410) 771-5668
adansicker@dansickerlaw.com

*Attorney for Defendants*

SO ORDERED this ___28th___ day of March, 2018

Hon. Eleanor L. Ross
United States District Court
Northern District of Georgia

16

*Exhibit 4*
*(Redacted)*

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. _____** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## AFFIDAVIT OF MARCUS PINCHERA IN SUPPORT OF RANDSTAD'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

I, Marcus Pinchera, declare as follows:

1.      I am over 18 years of age, of sound mind, and competent to give the testimony in this Affidavit.  I make this Affidavit upon my own personal knowledge and upon information provided to me by the records of Randstad Technologies, LLC ("Randstad") or information available through other employees of Randstad, except where it is expressly indicated otherwise. As to those matters stated on information and belief, I believe those matters to be true.

2.      I have nearly 10 years of experience in the staffing industry and serve as the Area Managing Director for Randstad.  I am familiar with Defendant Lisette Robles because she reported to me during her employment with Randstad.

### *Randstad's Business and Confidential Information*

3.      Randstad is a leader in the staffing solutions industry and is based in Cobb County, Georgia, where it has its corporate headquarters and principal place of business. Randstad and its affiliates provide individual employees ("Talent") to a diverse portfolio of businesses and organizations on a temporary or permanent basis to meet the customers' needs.

Randstad Technologies specializes in placing temporary employees in information technology ("IT") positions in a variety of industries.

4.      The staffing industry is a highly competitive, specialized business that is relationship-driven between customers, Talent, and the sales force.  Through decades of hard work, dedication, innovation and investment, Randstad has become a leader in the staffing industry.

5.      Randstad's success in the highly competitive staffing industry is directly dependent on its staffing teams' customer and institutional knowledge and Randstad's ability to provide top quality Talent to its customers, and top quality job placements to its Talent.  To that end, Randstad invests heavily in developing and maintaining customer relationships and in attracting and retaining top employees and Talent for both its internal operations and for assignments with its customers.

6.      Randstad's employees  receive substantial training, information, business contacts and other advantages that provide Randstad with a competitive advantage in the marketplace.  In addition, Randstad provides its employees with extensive access to its trade secrets and other confidential and proprietary information, including, without limitation, information relating to Randstad's business strategies, finances, methodologies, processes, operations, pricing, Customers, Talent and employees ("Confidential Information") when doing so is necessary for that employee's job duties.  Such Confidential Information is critical to Randstad's competitive position in the staffing industry.

7.      Randstad developed such Confidential Information at significant expense and effort over a number of years, such information is not generally available to the public or Randstad's competitors, and Randstad derives economic value from this information.

8.      Randstad also takes reasonable efforts to maintain the confidentiality of such information, including having its employees with access to such information sign confidentiality agreements and using password protected computers and password protected log-ins to Randstad's databases.

9.      If Randstad's Confidential Information were to fall into the hands of a competitor, Randstad's competitive position would be severely harmed, and the competitor would be able to trade on many years' worth of valuable accumulated knowledge.  Likewise, if a former employee retained Randstad's Confidential Information after his employment ended and/or used the Confidential Information while working for a competitor, Randstad's competitive position would be seriously harmed and both the former employee and the competitor would have an unfair competitive advantage.

### *Robles' Employment with Randstad and Access to Randstad's Confidential Information and Goodwill*

10.      Robles joined Randstad as an Account Manager in 2018 and initially sold Randstad's services to mid-market clients in the Phoenix, Arizona area.  Later in 2018, Robles switched to Randstad's National Sales Organization ("NSO") group, a business segment focused on targeting and servicing large institutional clients.  While she spent most of her time managing NSO accounts, she continued to service several smaller clients that she managed before moving into NSO accounts. Robles' primary account was CLIENT A , a large institutional client in the medical devices and services field.

11.      Through her employment with Randstad, Robles had access to and learned Randstad's Confidential Information relating to accounts she serviced and managed, including McKesson. This Confidential Information included, but was not limited to, (a) Randstad's marketing strategies, (b) client contact information, (c) growth strategies and methodologies, (d)

plans for business and service concepts under development by Randstad, (e) pricing offered to large customers and prospects, (f) sales pitches and proposals, (g) sales strategies, and (h) Talent contact information. Her employment with Randstad also provided her with access to specific customer relationships, including CLIENT A .

12.     On January 9, 2018, Ms. Robles executed an Employee Non-Competition and Confidentiality Agreement ("Agreement") with Randstad.  A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

### *Robles' Abrupt Resignation from Randstad*

13.     On Tuesday, September 8, 2020, Ms. Robles told me that she was leaving Randstad. Her departure came as a total shock. Ms. Robles came to me, started crying, and said that she needed to immediately leave Randstad because of family issues.

14.     I asked her whether there was anything we could do to help, such as providing her with leave or allowing her to take a leave of absence. Ms. Robles was a high-performer, and I didn't want to think that some external pressures could prevent her from working here.

15.     When I asked her what we could do, she refused to elaborate and just said she couldn't do this anymore, or something to that effect, and that she was trying to be as professional as she could. I told her that this was very out of character for her and that it wasn't very professional to insist on leaving without any notice.

16.     Based on her conduct, I inferred that she was leaving to join Beacon Hill, a direct competitor to Randstad that is known for hiring employees in role that violate the employees' restrictive covenant agreements and instructing those employees not to tell their prior employers where they are going to work. I told Ms. Robles that, based on what she was doing, it sounded like she was going to Beacon Hill. She did not respond to my statement.

17.     Later that day, my colleague, Jeff Panning, informed CLIENT A , one of the main clients managed by Ms. Robles, that she would no longer be working for Randstad. Soon after, the client contact at CLIENT A told us that he was sad to see Ms. Robles go but "everyone needs to grow." CLIENT A then immediately put "on hold" all of our active work for CLIENT A for this particular project.

18.     My understanding is that CLIENT A has not responded when Randstad has asked what Randstad can do to retain this work.

19.     It is my belief that Ms. Robles talked to CLIENT A about her imminent move to Beacon Hill before she resigned from Randstad. On Friday, September 4, the client contact at CLIENT A asked for information regarding some potential requisitions, and Ms. Robles delayed, saying, "Disregard. I'll bug you on Tuesday. : )" A copy of that email is attached as **Exhibit B** to this Affidavit.

20.     My initial suspicion that Beacon Hill hired Ms. Robles received more support just a few days later, when I learned that Beacon Hill planned to open a Phoenix office and that they were specifically looking for individuals with experience working with or managing large client accounts.

21.     I have since learned that Ms. Robles is employed by Beacon Hill. She has not, however, updated her LinkedIn profile to identify her new employer.

[*Signature on following page*]

5

FURTHER AFFIANT SAYETH NOT.

MARCUS PINCHERA

STATE OF _Georgia_

COUNTY OF _Cobb_

Personally appeared before me, Marcus Pinchera, either being personally known to me or proven by satisfactory evidence, and acknowledged that he signed the foregoing document.

This the _30th_ day of September, 2020.

Notary Public _Charlotte E. Myers_
(Type or Print Name)

My commission expires: _10/27/2023_

(Notary Seal)

42033564v.3

6

*Exhibit A*

DocuSign Envelope ID: F26B64CE-3328-4357-9257-0530F5D4449D



Staffing | Professionals | HR Solutions | Inhouse Services

## Employee Non-Competition and Confidentiality Agreement
*(Not for use in California)*

This Employee Non-Competition and Confidentiality Agreement (this "Agreement") is made and entered into by and between the individual signing this Agreement below ("you") and Randstad, a Delaware limited liability company, with its principal place of business in Atlanta, Georgia.

WHEREAS, Randstad desires to employ or continue employing you and to provide you with valuable training and access to Randstad's Confidential Information and Trade Secrets; and you desire such employment, training and access.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt of which is hereby acknowledged, you and Randstad agree as follows:

1.      **At-Will Employment**.  You acknowledge that your employment with Randstad is at-will and not for any prescribed term, meaning either party may terminate your employment at any time, for any reason (except those reasons prohibited by law), with or without notice and with or without cause.  Your entitlement to compensation ends when your employment terminates for any reason. The parties acknowledge that your duties, compensation, title and responsibilities may change over time; notwithstanding any such changes, you will continue to have access to Randstad's Confidential Information and Trade Secrets and this Agreement, unless modified in writing, shall continue to apply and be valid.

2.      **Definitions**.  For the purposes of this Agreement, the following definitions shall apply:

(a)      "Business of the Company" means the services provided by Randstad, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, payrolling, recruitment process outsourcing, independent contractor assessment and placement, HR and management consulting, managed services, solutions services, or other services that are the same as or substantially similar to the services you provided on behalf of Randstad within two (2) years prior to the date of your separation from Randstad.

(b)      "Confidential Information" means data and information belonging to Randstad (i) relating to the Business of the Company, (ii) which has been disclosed to you or of which you became aware as a consequence of or through your relationship with Randstad, (iii) which has value to Randstad, and (iv) which is not generally known to the public or Randstad's competitors.  Without limiting the generality of the foregoing, "Confidential Information" includes Randstad's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders).  Notwithstanding anything herein to the contrary, the term "Confidential Information" shall not be interpreted to include or mean any data or information that has been voluntarily disclosed to the public by Randstad (except where such public disclosure has been made by you without authorization from Randstad), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

(c)      "Invention" means any discovery (whether patentable or not), development (of a technical nature or not), invention, process, design, method, formula, technique, machine, manufacture, composition of matter, algorithm or computer program, plan, writing, program, and improvement relating to Randstad's business or originating from use of Randstad's resources, which you conceive, devise, develop, reduce to practice, perfect or create, alone or jointly with any other person or entity, during the course of employment with Randstad.

(d)      "Material Contact" means any contact between you and a customer, Placement Candidate or Talent (i) with whom or which you dealt on behalf of Randstad; (ii) whose dealings with Randstad were coordinated or supervised by you; (iii) about whom you obtained Confidential Information in the ordinary course of business as a result of your association with Randstad; or (iv) who receives products or services authorized by Randstad, the sale or provision of which results or resulted in compensation, commissions, or earnings for Randstad within two (2) years prior to your separation from employment with Randstad.

(e)      "Personal Information" consists of a person's first and last name (or first initial and last name), plus one or more of the following: (i) Social Security number; (ii) driver's license number or state-issued identification card number; (iii) bank account or other financial account number; (iv) credit or debit card number; or (v) (where provided by law) the person's e-mail address.

(f)      "Placement Candidate" means (i) any person who was identified by Randstad for placement on an assignment with a customer as of the date of your separation of employment with Randstad or (ii) any person who completed an assignment with Randstad within the twenty-four (24) months prior to the date of your separation of employment with Randstad and is eligible to be placed on assignment with a customer again.

(g)      "Prior Invention" means any discovery, invention, process, design, plan, writing, program, or improvement that you (i) have, alone or jointly with others, conceived, developed or reduced to practice prior to the commencement of employment with Randstad and (ii) consider to be your property or a third party's property.

(h)      "Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i)      a radius of twenty-five (25) miles of any office(s) to which you were assigned or which you managed, during the twelve (12) months prior to the date of your separation of employment with Randstad;

(ii)      a radius of twenty-five (25) miles of any office(s) in which you performed services on behalf of Randstad at any time during the twelve (12) months prior to the date of your separation of employment with Randstad;

(iii)      a radius of twenty-five (25) miles of any office(s) in which Randstad employed personnel whom you directly or indirectly supervised or managed during the twelve (12) months prior to the date of your separation of employment with Randstad; and

(iv)      any region or territory to which you were actually assigned or which you managed during the twelve (12) months prior to the date of your separation of employment with Randstad.

(i)      "Talent" means any employee who is placed by Randstad on an assignment with a customer as of the date of your separation of employment with Randstad.

(j)      "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar applicable law.

3.      **Entrustment and Preservation of Confidential Information and Trade Secrets**.

(a)      You acknowledge that Confidential Information and Trade Secrets are valuable, special and unique assets of Randstad's business.  In the course of your employment with Randstad, Randstad will disclose to you and grant you access to Confidential Information and Trade Secrets, and you desire to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by Randstad.  In consideration of Randstad's entrusting to you certain of its Confidential Information and Trade Secrets, you shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of you or any person or entity other than Randstad for any purpose whatsoever (i) at any time

during your employment with Randstad, and (ii) after your separation from employment with Randstad (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. You acknowledge that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to Randstad.

(b)     Unless done for and on behalf of Randstad during your employment by Randstad, you will never use or disclose any person's Personal Information which you may learn or acquire at any time during employment with Randstad. Furthermore, you shall at all times take appropriate measures to protect against the loss of, or damage to, Personal Information in your possession or control.

(c)     **Notice of Immunity under the Defend Trade Secrets Act.**  The Defend Trade Secrets Act, 18 U.S.C. § 1833(b), provides an immunity for the disclosure of a trade secret to report suspected violations of law and/or in an anti-retaliation lawsuit.

(i)     IMMUNITY.  An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (1) is made (A) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(ii)     USE OF TRADE SECRET INFORMATION IN ANTI-RETALIATION LAWSUIT.  An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (1) files any document containing the trade secret under seal; and (2) does not disclose the trade secret except pursuant to court order.

4.     **Restrictive Covenants**.  You acknowledge that Randstad has expended substantial amounts of money, time and effort in developing and maintaining its extensive personnel resources, Confidential Information, Trade Secrets, goodwill and relationships with customers, Placement Candidates, Talent and associate (internal) employees. Consequently, you shall devote your best efforts, attention and energies to Randstad's business at all times during your employment. Furthermore, in consideration of Randstad's initial and continuing employment of you, Randstad's provision to you of initial and ongoing training regarding Randstad's business, and Randstad's entrustment to you of Randstad's Confidential Information and Trade Secrets (without such training and entrustment of Confidential Information and Trade Secrets you acknowledge that you could not perform your job duties and responsibilities), you agree as follows:

(a)     During your employment with Randstad and the eighteen (18) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad:

(i)     contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of Randstad with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(ii)     contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom you had Material Contact at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for the purpose of providing services competitive with the Business of the Company;

(iii)     contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to

the date of your separation of employment with Randstad for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with Randstad, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv)     hire any associate (internal) employee of Randstad with whom you worked at any time during the twelve (12) months prior to the date of your separation of employment with Randstad for any person or entity that competes with the Business of the Company.

(b)     During your period of employment with Randstad, you shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c)     During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, operate, control, or own any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d)     During your employment with Randstad and the twelve (12) month period immediately following the date of your separation of employment with Randstad, regardless of the reason for such separation, you shall not, within the Restricted Territory, directly or indirectly, on your own behalf or on behalf of any person or entity other than Randstad, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i)     providing products or services competitive with the Business of the Company;

(ii)     supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii)     developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv)     engaging in responsibilities in which you would utilize or disclose Confidential Information.

5.     **Disclosure and Assignment of Inventions**.

(a)     To the fullest extent permitted by applicable law, any Invention, and all intellectual property rights to such Invention, shall be the exclusive property of Randstad.  You hereby irrevocably assign to Randstad all rights, title, and interest (including, without limitation, patent rights, trademarks and copyrights) in any Invention.  You hereby waive and agree never to assert any rights in any Invention.  You agree to promptly and fully disclose to Randstad any Invention, execute any assignment and other written instrument as necessary to grant Randstad complete legal ownership to every Invention, and to do any other acts as may be required for Randstad to patent, copyright, trademark or otherwise protect such Invention and to invest in Randstad the entire right, title and interest in Invention. Except as required by your duties on behalf of Randstad, you shall not use or disclose any Invention to benefit a person or entity other than Randstad, including without limitation a person or entity that competes against Randstad.

(b)     Notwithstanding subsection (a), you shall retain all ownership rights in any invention excluded from assignment pursuant to applicable law (as described more fully in Exhibit A) and in any Prior Invention you list on Exhibit A. You represent and warrant that Exhibit A includes a complete and accurate list of every Prior Invention claimed by you individually or jointly with others.

6.    **Return of Company Documents and Equipment**.  You acknowledge that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of Randstad, whether or not they contain Confidential Information or Trade Secrets, and all Randstad-owned equipment which may be provided for your use while employed by Randstad, are and shall continue to be the property of Randstad. You shall return to Randstad all such documents and equipment in your possession or control immediately upon the date of your separation of employment with Randstad or sooner if requested by Randstad.

7.    **Freedom to Contract**.  You represent to Randstad that you have the legal right to enter into this Agreement without violating any other employment agreement or consulting arrangement, including any non-competition, non-solicitation or confidentiality agreements (collectively, "Other Contracts"), and that you will not become subject to any Other Contracts in conflict with this Agreement during your employment with Randstad. You further represent that you will not upload to Randstad's systems, disclose to Randstad, or use for Randstad's benefit any trade secrets or confidential information which is the property of any prior employer or other third party.  If you fail to disclose or breach any Other Contracts, Randstad may incur significant legal exposure and expenses.  Accordingly, in the event of any such failure to disclose or breach of Other Contracts, Randstad reserves the right to terminate your employment and to seek all available legal remedies in connection with the breach of the representations set forth in this Section.

8.    **Enforcement and Damages**.  You acknowledge that Randstad will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by Randstad of its benefits or rights under this Agreement as the result of a breach, default or violation by you of any of your obligations under this Agreement.  Accordingly, Randstad shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by you of any provision of this Agreement or to enforce any such provision.  Randstad will not be required to post any bond as a condition of receiving such injunctive relief, and you hereby specifically waive the right to request or require the posting of a bond as a condition of Randstad receiving injunctive relief.  You shall reimburse Randstad for all reasonable legal fees and costs it incurs in connection with bringing a successful action to enforce this Agreement.

9.    **Compliance with Policies/Procedure for Complaints**.  You shall comply with all applicable Randstad policies of which you have been made aware, including but not limited to those policies found in the handbook published on the Human Resources Department's page of Randstad Connect or Workplace.  In addition, you shall at all times act in conformity with Randstad's Business Principles (http://www.randstad.com/corporate-governance/our-principles/business-principles), and you acknowledge that you have been apprised of Randstad's Misconduct Reporting Procedure (see link within Business Principles).  In the event that a complaint is warranted under the Misconduct Reporting Procedure, you may visit www.speakupfeedback.eu/web/integrityatrandstad/us or call 1-866-250-6706. In connection with either reporting mechanism, the access code is 42115. You acknowledge that by this Agreement, you have been notified that if you have any questions or concerns about your employment, Randstad's policies or principles, or if you have a complaint of any kind concerning your employment, that you have the right and are encouraged to notify Human Resources at hrsupport@randstadusa.com or 1-877-601-7453.

10.    **Miscellaneous**.

(a)    You acknowledge that your obligations under this Agreement are personal and that you may not assign any of your rights or delegate any of your duties or obligations under this Agreement.  Randstad may assign, without notice to you, its rights and obligations under this Agreement, which shall inure to the benefit of, and shall be binding upon, the successors and assigns of Randstad.

(b)    If, after executing this Agreement, you: (i) are promoted to, assigned to or otherwise assume one or more positions or functions other than or in addition to the position or functions at the time you signed this Agreement, regardless of title, or (ii) are transferred or assigned to or otherwise work for any affiliate,

DocuSign Envelope ID: F26B64CE-3328-4357-9357-05305D4449FD

subsidiary or other division or business unit of Randstad, the terms of this Agreement shall continue to apply with full force and effect.

(c)     You acknowledge that the covenants contained in Sections 3 and 4 are reasonable and essential to protect Randstad's Confidential Information, Trade Secrets, goodwill and its relationships with customers, Placement Candidates, Talent and associate (internal) employees, and that such covenants will not impair your ability to procure subsequent comparable employment.

(d)     This Agreement may be executed in two or more counterparts, all of which together shall constitute a single agreement.  A copy, .pdf/.jpg or facsimile shall be treated as an original Agreement for all purposes.

(e)     Each of the covenants and provisions contained in this Agreement is severable and shall be enforceable independently of every other provision.  In the event that any provision of this Agreement shall be held to be overly broad in any respect (including, without limitation as to scope, geographic applicability, time period, activity or subject) so as to be unenforceable as written and agreed to by the parties, it is the parties' intention that such provision shall be construed by the appropriate court or arbitrator by limiting or reducing it so as to be enforceable to the fullest extent compatible with the then applicable law, and the parties hereby specifically request that any such court or arbitrator exercise its discretion consistent with this intention.

(f)     If you previously executed other written agreements with Randstad relating to the subject matter of this Agreement, and/or if you later enter into other written agreements that contain provisions similar to the provisions contained in this Agreement, all such provisions shall be interpreted to provide Randstad with cumulative rights and remedies, and the benefits and protections provided to Randstad under each such agreement shall be given full force and effect. No prior or contemporaneous agreement, whether written or oral, shall be construed to change, amend, alter, repeal or invalidate this Agreement.

(g)     A waiver by one party of a breach of this Agreement by the other party shall not be construed as a waiver of any subsequent or similar breach.

(h)     This Agreement may be amended or terminated only by written agreement of both parties.

(i)     Nothing in this Agreement shall relieve you of any duties or obligations you have to Randstad under statutory or common law, which include but are not limited to: fiduciary duties, the duty of loyalty, the duty not to tortiously interfere with business relationships, the duty not to engage in unfair competition, and the duty not to misappropriate any Trade Secrets.

(j)     You acknowledge that Randstad provided you with a copy of this Agreement prior to or concurrent with making an offer of employment, or an offer of change in your job classification, or implementation of a merit increase or other change in your compensation and benefits, and informed you, prior to your execution of this Agreement, that this Agreement is required as a condition of employment with Randstad.

11.     **Agreement Comprehension and Legal Advice**.  You represent that you have read this Agreement completely and carefully and that you understand the contents and effect of this Agreement. You further represent that you have had the opportunity to consult with an attorney before voluntarily signing below and have either consulted with an attorney or waived the opportunity to do so.

12.     **Governing Law and Selection of Forum**.  This Agreement and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the state of Georgia, without giving effect to provisions thereof regarding conflict of laws.   Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be

brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. You and Randstad waive any objection based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

**IN WITNESS WHEREOF**, the parties have signed this agreement as of <u>1/9/2018</u>.

(Date)

**Employee (you)**:                                    **Randstad**:

Lisette Robles                                         By: Angela Raughley

(Signature)

Lisette Andrea Robles                                  Angela Raughley

(Print Name)                                           HR Operations Manager

                                                       (Print Name and Title)

## EXHIBIT A

**List below any Prior Invention, as that term is defined in Section 2 of the Agreement.**

_____

_____

_____

_____

By signing the Agreement, you hereby agree not to incorporate or permit to be incorporated any Prior Invention in any Invention or other work produced for Randstad without Randstad's prior written consent.  If, in the course of employment with Randstad and without Randstad's prior written consent, you incorporate a Prior Invention into work produced for Randstad, you hereby grant to Randstad a nonexclusive, royalty-free, paid-up, irrevocable, worldwide license (with the full right to sublicense) to make, have made, modify, use, sell, offer for sale and import such Prior Invention, to the extent permitted by applicable law.

**Exclusions from the Assignment Provision of Section 5 of the Agreement**:

**For employees in Delaware, Illinois, Kansas, Minnesota, North Carolina and Washington:** Section 5 of the Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of Randstad was used and which was developed entirely on your own time, unless: (1) the invention relates directly to the business of Randstad, or to Randstad's actual or demonstrably anticipated research or development; or (2) the invention results from any work performed by you for Randstad.

**For employees in Utah:** Section 5 of the Agreement does not apply to an invention that is created by you entirely on your own time and is not an "employment invention." An "employment invention" is an invention which is conceived, developed, reduced to practice or created by you (i) within the scope of employment for Randstad; (ii) on Randstad's time; or (iii) with the aid, assistance, or use of any of Randstad's property, equipment, facilities, supplies, resources or intellectual property.

*Exhibit
(Redacted)*



**Randstad** [randstadusa.com] **provides a human touch in a technology driven world.** We connect candidates and clients within the F&A, Engineering, Technologies, Life Sciences, Healthcare, Office and Administration as well as Manufacturing and Logistics areas for all types of organizations. Randstad provides a range of workforce solutions including recruitment process outsourcing, HR solutions, onsite management and more.

**Share your experience with Randstad [randstad.us]**

---------- Forwarded message ---------
From: **Lisette Robles** <lisette.robles@randstadusa.com>
Date: Fri, Sep 4, 2020 at 7:53 AM
Subject: Re: Detials
To: Biondino, Matt (2) <Matt.███████@CLIENT A███████>

Disregard. I'll bug you on Tuesday. :)

**Lisette Robles**

Account Manager; National Strategic Organization

**Randstad Technologies**

3838 N Central Ave

Phoenix, AZ 85012

P: 602.635.1338

M: 480.548.0087

F: 480.776.3301

Lisette.Robles@randstadusa.com **[randstadusa.com]**
www.randstadusa.com **[randstadusa.com]**



**Randstad** [randstadusa.com] **provides a human touch in a technology driven world.** We connect candidates and clients within the F&A, Engineering, Technologies, Life Sciences, Healthcare, Office and Administration as well as Manufacturing and Logistics areas for all types of organizations. Randstad provides a range of workforce solutions including recruitment process outsourcing, HR solutions, onsite management and more.

**Share your experience with Randstad [randstad.us]**

On Fri, Sep 4, 2020 at 7:48 AM Lisette Robles <lisette.robles@randstadusa.com> wrote:

Melissa's role

Please send details

and

Analyst roles

**Lisette Robles**

Account Manager; National Strategic Organization

**Randstad Technologies**

3838 N Central Ave

Phoenix, AZ 85012

P: 602.635.1338

M: 480.548.0087

F: 480.776.3301

Lisette.Robles@randstadusa.com [randstadusa.com]
www.randstadusa.com [randstadusa.com]



**Randstad** [randstadusa.com] **provides a human touch in a technology driven world.** We connect candidates and clients within the F&A, Engineering, Technologies, Life Sciences, Healthcare, Office and Administration as well as Manufacturing and Logistics areas for all types of organizations. Randstad provides a range of workforce solutions including recruitment process outsourcing, HR solutions, onsite management and more.

**Share your experience with Randstad [randstad.us]**

*Exhibit*
*(Redacted)*

<div align="center">

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

</div>

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. _____** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |

<div align="center">

**AFFIDAVIT OF JEFF PANNING IN SUPPORT OF RANDSTAD'S EMERGENCY**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

</div>

I, Jeff Panning, declare as follows:

1.      I am over 18 years of age, of sound mind, and competent to give the testimony in this Affidavit.  I make this Affidavit upon my own personal knowledge and upon information provided to me by the records of Randstad Technologies, LLC ("Randstad") or information available through other employees of Randstad, except where it is expressly indicated otherwise. As to those matters stated on information and belief, I believe those matters to be true.

2.      I have over 12 years of experience in the staffing industry and currently serve as the Director, Strategic Accounts at Randstad.  I make this Affidavit in support of Randstad's Emergency Motion for Temporary Restraining Order.

3.      I am personally familiar with Lisette Robles. When she worked for Randstad, I had her as a dotted-line report. Marcus Pinchera was her direct supervisor, but I had primary responsibility for managing Randstad's relationship with CLIENT A in the Phoenix area.

4.      With my assistance and direction, Ms. Robles handled the day-to-day performance and work requisition for CLIENT A .

5.     On Tuesday, September 8, 2020, Ms. Robles suddenly informed Randstad that she was leaving Randstad. When I communicated this to the client contact, he acted over-the-top surprised but then immediately followed up by saying that, without Ms. Robles, he did not see how Randstad would be able to keep this business.

6.     I thought this was very odd. If Ms. Robles' departure was such as a surprise to him, it seemed out of sync for him to say with such certainty that Randstad would not be able to handle this business without Ms. Robles. And, by this point, Randstad had been working on this project for  more than a year and a half, so it did not seem right for ▋CLIENT A▋ to suddenly terminate this relationship.

7.     I later sent a note to the client contact stating that Ms. Robles performed her work at my direction that Randstad would still be able to provide high-quality service to ▋CLIENT A▋, and that I would like to talk to him about retaining this work. In response, the client contact said that he was "sad Lisette is no longer with the company, but everyone needs to grow" and that he would be putting everything "on hold" for this portfolio of work. A copy of this email is attached as **Exhibit A** to this affidavit.

8.     ▋CLIENT A▋ has not responded to follow-up messages from me asking what Randstad could do to retain this business.

9.     On September 30, 2020, I learned that Ms. Robles went to work at Beacon Hill. This development did not surprise me, because, in my experience, the way Ms. Robles handled her departure is consistent with Beacon Hill's hiring practices and recommendations to its new hires.

10.     Beacon Hill grows in large part by poaching employees from competitors to start new offices or grow its operations in existing markets. I know this because Beacon Hill recruited

2

me from my prior employer, another staffing company in the Minneapolis, Minnesota market, to help start the Minneapolis office.

11.     When Beacon Hill hired new employees for this office, they received the same offboarding. Beacon Hill would advise the new employee to call his or her best clients and tell them that you took a "growth opportunity" but not immediately tell them where the employee was going. Beacon Hill would also generally tell the new employee to leave without providing any notice to the former employer. This strategy often made for a rocky transition to a new contact at the former employer, hopefully laying the groundwork for Beacon Hill to gain this business.

12.     Beacon Hill then advises new hires that they should contact their main clients "once the dust settles.". Beacon Hill also tells employees to not worry about being sued, because the company will "take care of it" if the new hire is sued.

*[Signature on following page]*

3

FURTHER AFFIANT SAYETH NOT.

_____
Jeff Panning

STATE OF _GEORGIA_

COUNTY OF _COBB_

    Personally appeared before me, Jeff Panning, either being personally known to me or proven by satisfactory evidence, and acknowledged that he signed the foregoing document.

This the _30th_ day of _September_, 2020.

_____
Notary Public _Charlotte E. Myers_
(Type or Print Name)

My commission expires: _10/27/2023_

(Notary Seal)

42033564v.3

*Exhibit A*

---------- Forwarded message ---------
From: **Jeff Panning** <jeff.panning@randstadusa.com>
Date: Thu, Sep 17, 2020 at 8:34 PM
Subject: Re: [EXTERNAL] Strategic Partner Meeting Request
To: Biondino, Matt (2) <Matt.██████@CLIENT A>

Matt - I wanted to follow up on this. Can you talk tomorrow? I am still having a hard time understanding the move away from Randstad here, unless I am not getting the whole story, as I was the one who specifically told Lisette to follow the exact protocol you were asking for. It's also why I removed all other sales reps off of Steve's org. That had nothing to do with Lisette at all and I will give her great kudos on the following process; however, the structure was built into our strategic plan with ███ overall.

Do you have time at some point tomorrow to connect about this?

On Wed, Sep 9, 2020 at 12:50 PM ██████, Matt (2) <Matt.Biondino@CLIENT A> wrote:
> Hi Jeff -
>
> Thank you for our conversation a few minutes ago. I am sad Lisette is no longer with the company, but everyone needs to grow.
> Per the below, I will put anything further on hold for Steve Beier's group, as we are very regimented in the process and Lisette was able to manage and handle as a partner with me "agency" roles, based on difficulty.
>
> I am very excited you have a preferred vendor relationship with ███ and can move forward with other divisions outside of Steve's organization and directs.
>
> Thank you again for everything!
>
> Matt

-----Original Message-----
From: Jeff Panning <jeff.panning@randstadusa.com>
Sent: Wednesday, September 9, 2020 1:42 PM
To: ███ Steve <Steve.Beier@CLIENT A>
Cc: ██████ Matt (2) <Matt.Biondino@CLIENT A>
Subject: [EXTERNAL] Strategic Partner Meeting Request

CAUTION: This email was sent from an EXTERNAL source. Use caution when clicking links or opening attachments.

---------------------------------------------------------------------------
Steve - Matt made me aware you would like to cut ties with Randstad supporting Hercules due to us losing a rep who was operationally managing the day to day.

Wondering when we can speak about this as the direction she was taking was from me and I can easily backfill her with someone who is willing to follow your teams process.

Do you have time to discuss this later in week or next?

Respectfully

Jeff Panning
Director, Strategic Accounts
612-741-9178

*r    ed   rder*

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO. 20106125** |
| | ) | |
| **LISETTE ROBLES,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## PROPOSED  TEMPORARY RESTRAINING ORDER AND RULE NISI

On Thursday, October 1, 2020, Plaintiff Randstad Technologies, LLC ("Plaintiff" or "Randstad") filed a Motion for Temporary Restraining Order (the "Motion").  The Motion is supported by Randstad's Memorandum of Law, as well as the supporting affidavits of Marcus Pinchera and  eff Panning.  The Court heard oral argument on Randstad's Motion on

, 2020 (the "Hearing").  Defendant was provided advance notice of the Hearing and given the opportunity to attend.

The Court believes immediate consideration is appropriate in light of the evidence presented.  After considering all evidence, it appears to the Court from the specific facts shown that Plaintiff has met the standards applicable to the award of a temporary restraining order.  *See arden  ills Civic  ss n v. M  RT* , 539 S.E.2d 811, 812-13 (Ga. 2000).

 T  S HEREBY ORDERED THAT, pursuant to O.C.G.A. § 9-11-65, from the date of entry of this Order until the Court enters an order on Randstad's forthcoming Motion for a Preliminary  njunction, Defendant, including her agents, representatives, employers, and or

anyone else active in concert or participation with her who receives notice of this Order by personal service or otherwise, are hereby ordered as follows:

1.      Defendant Robles is enjoined from wor  ing for Beacon Hill Staffing Group, LLC, and any company that performs activities substantially similar to those she performed for Randstad within a 25-mile radius of any location where she performed services for Randstad, or from holding any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the business of Plaintiff in violation of the terms of the Non-Competition and Confidentiality Agreement (the "Agreement") attached to this Order as Exhibit A;

2.      Defendant Robles is enjoined from contacting, soliciting, servicing, or selling, or attempting to contact, solicit, service, or sell any Randstad customer with which she had material contact during the 12-month period prior to her resignation from Randstad for the purpose of providing the same services or substantially similar service to those she provided when employed by Randstad;

3.      Defendant Robles shall deliver (within 7 business days of entry of this Order) to the offices of Plaintiff's counsel, Seyfarth Shaw LLP, located at 1075 Peachtree Street, Suite 2500, Atlanta, Georgia 30309: (i) any computer devices or electronic storage media or devices in her possession, custody, or control that currently or previously contained any of Plaintiff's trade secrets or other confidential or proprietary information, and (ii) any other property of Plaintiff, in any format, in her possession, custody or control;

4.      Robles shall identify (within 7 business days of entry of this Order) any and all Randstad customers, placement candidates, and employees whom Robles, or anyone acting on her behalf, has solicited or otherwise contacted on or after September 8, 2020, including: (a) the

2

date(s) and time(s) the contact occurred; (b) the name of the person(s) contacted; (c) the

method(s) of communication; and (d) a description of what was discussed; and

     5.    Robles shall immediately preserve all data and information in their possession,

custody, or control, of any type and however maintained, pertaining to Plaintiff's business or the

allegations set forth in Plaintiff's Complaint in this action, including, but not limited to, data and

information in an electronic format.

     6.    Plaintiff's Motion for Preliminary  njunction shall be heard by this Court on

                     , 2020 at        a.m. p.m. in Courtroom    .

     7.    Plaintiff shall serve this Order on Defendant.

  T  S SO ORDERED, this     day of          , 2020, at     a.m. p.m.

                               udge, Superior Court of Cobb County

ID#2020-0106092-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**

C. LaTain Kell Sr. - 49
OCT 01, 2020 11:39 AM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. 2106125** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

### PLAINTIFF'S EMERGENCY MOTION FOR E PEDITED DISCOVERY
### AND ORDER TO PRESERVE EVIDENCE

Plaintiff Randstad Technologies, LLC ("Randstad"), by and through its attorneys, and pursuant to O.C.G.A. §§9-11-33 and 9-11-34 and Rule 6.7 of the Uniform Superior Court Rules, moves this Court to enter an order granting the following relief: (1) authori ing Randstad to conduct limited, expedited discovery focused on identifying the irreparable harm caused by Defendant Lisette Robles' ("Robles" or "Defendant") conduct; and (2) requiring Defendant to preserve evidence in advance of a hearing on Randstad's impending request for a preliminary injunction.[1]

Randstad's Motion is based on the accompanying Memorandum of Law and Randstad's Motion for Temporary Restraining Order, Memorandum of Law in Support, and all attached exhibits. Randstad requests that the Court grant its motion and enter an order finding that good cause exists to authori e limited expedited discovery, requiring Defendant to respond to Randstad's written discovery requests and produce responsive documents within 14 days of

---

[1] Randstad will contemporaneously provide copies of its filings to Defendant by email, in addition to service by overnight mail.

service, directing that general discovery shall commence immediately, and ordering that the submission of any motion to dismiss shall not operate as a stay of discovery. A proposed order is attached for the Court's convenience.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Robert C. Stevens*
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Counsel for Plaintiff Randstad Technologies, LLC*

</div>

Dated: October 1, 2020

2

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

|  |  |  |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO. 2106125** |
| | ) | |
| **LISETTE ROBLES,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 1, 2020, he caused copies of the foregoing

Plaintiff's Emergency Motion for Expedited Discovery to be served on Lisette Robles by email

and mail (overnight delivery specified) at the following addresses:

> Lisette Robles
> larobles@gmail.com
> 1319 W. 12th Street
> Tempe, AZ 85281

> */s/ Robert C. Stevens*
> Robert C. Stevens
> Counsel for Randstad

65864220v.1

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. 2106125** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**PROPOSED  ORDER GRANTING PLAINTIFF S EMERGENCY MOTION FOR
E  PEDITED DISCOVERY AND ORDER TO PRESERVE EVIDENCE**

This cause came before the Court on Plaintiff Randstad Technologies, LLC's Motion for

Expedited Discovery Order and Order to Preserve Evidence. For the reasons set forth herein, that

Motion is GRANTED.

Accordingly,  T  S HEREBY ORDERED that Defendant Lisette Robles shall:

1.      Effective immediately upon actual or constructive receipt of this Order, preserve

and not destroy any and all evidence and information relevant to the facts alleged in Randstad's

Complaint;

2.      No later than seven days from the date of this Order, identify all electronic devices

and accounts, including, but not limited to, any home and or wor  computers, hard drives, flash

drives, iPods, iPads, cell phones, tablets, PDAs and other external storage devices, email accounts

and other electronic accounts, including cloud storage such as Google Drive, in her possession,

custody or control that currently contain or have contained Randstad's property, confidential

information or trade secrets at any point on or after September 8, 2020;

3.      No later than seven days from the date of this Order, produce phone records for all calls and text messages made or received by Robles on or after  uly 1, 2020;[1]

4.      No later than seven days from the date of this Order, produce all text messages, iMessages, and messages sent on any messaging platform, including but not limited to Lin ed N, G-chat, Yahoo Chat, and Faceboo  Messenger, between Robles and any other individual, including Beacon Hill Employees, regarding her departure from Randstad, staffing services, or her current or future employment at Beacon Hill that were sent or received on or after  uly 1, 2020;

5.      No later than 14 days from the date of this Order, produce all non-privileged e-mails from her personal e-mail account(s) that were sent or received on after  uly 1, 2020 relating to any of the following: Randstad, Randstad's customers, her current or future employment at Beacon Hill, and Randstad's Confidential  nformation and Trade Secrets;

6.      No later than 14 days from the date of this Order, provide responses to the proposed expedited discovery requests attached to Randstad's motion for expedited discovery; and

7.      Provided that Randstad provides at least seven calendar days' notice, appear for a deposition.

8.      Discovery shall commence immediately, and the filing of a motion to dismiss shall not trigger an automatic stay of discovery under O.C.G.A. § 9-11-12(j).

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[1] Produce these records in Excel format, which can be done automatically for both  eri on and AT  T phones. For  eri on numbers, access the "Calls    Messages" tab for " iew My Bill" to create spreadsheets. For AT  T numbers, go to "Billing    Payment," select " iew My Bill," select "Usage," select "Data, text,    tal  logs," and select "Excel" in the top-right corner of the window.

The Court also authori es the immediate commencement of discovery.  Randstad is D RECTED to send a copy of this Order to Robles by e-mail and mail or, if Robles is represented, to her counsel.

SO ORDERED this          day of October, 2020.


                              udge, Superior Court of Cobb County

65864422v.2

ID# 2020-0106091-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**

C. LaTain Kell Sr. - 49
OCT 01, 2020 11:39 AM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO. 2106125** |
| | ) | |
| **LISETTE ROBLES,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LA    IN SUPPORT OF
## ITS EMERGENCY MOTION FOR E   PEDITED DISCOVERY AND
## ORDER TO PRESERVE EVIDENCE

Plaintiff Randstad Technologies, LLC ("Randstad"), by and through its attorneys, and pursuant to O.C.G.A. §§ 34(b)(1-2) and Rule 6.7 of the Uniform Superior Court Rules, moves this Court to enter an order allowing: (1) Randstad to conduct limited, expedited discovery focused on evidence relevant to Randstad's request for preliminary injunctive relief against Defendant Lisette Robles ("Robles); and (2) requiring Robles to preserve evidence in advance of a hearing on Randstad's impending request for a preliminary injunction.[1]

## INTRODUCTION AND FACTUAL SUMMARY

This is a restrictive covenant case.  As described in detail in Randstad's Motion for Temporary Restraining Order ("TRO"), Robles has violated and continues to violate, her Employee Non-Competition and Confidentiality Agreement with Randstad.  Accordingly, Randstad requests that the Court authori e the immediate commencement of discovery, limited expedited discovery, and order Robles to preserve and not destroy evidence relevant to this dispute.

---

[1] Randstad has provided copies of its filings to Robles by email, in addition to service by overnight express mail.

## ARGUMENT

The Georgia Civil Practice Act permits the Court to alter the default timing of discovery. O.C.G.A. § 9-11-34(b)(1-2), § 9-11-33(a)(2). "A court may allow expedited discovery upon a showing of good cause." *Merial LLC v. ido har, nc.*, No. 1:13-C -1207-SC , 2013 WL 12072140, at  2 (N.D. Ga. May 22, 2013) (granting expedited discovery in conjunction with a motion for preliminary injunction).  n assessing good cause, courts commonly consider the following factors:

> (1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made.

*Th ssen ru levator Cor . v. ubbard*, Civ. No. 2:13-cv-202-FTM-29SPC, 2013 WL 1953346, at  1 (M.D. Fla. May 10, 2013).

Here, each of the relevant factors is in favor of granting Randstad's request for expedited discovery. First, Randstad's Motion for TRO is pending, which Randstad anticipates will be followed shortly thereafter by a motion for preliminary injunction. Second, as evidenced by the proposed order attached hereto, the breath of Randstad's requested discovery is narrowly tailored to a limited responsive date-range of *less than three onths*. The requests are further focused on specifically identifying evidence relevant to Randstad's request for interim injunctive relief, rather than uncovering all evidence that may be relevant in this matter.

Third, it is imperative that Randstad be permitted to immediately issue discovery focused on identifying the scope and extent of Robles' violations of her Agreement with Randstad and to ensure that evidence is preserved. Without this expedited discovery, there is a substantial li elihood that Robles will continue to improperly compete against Randstad and solicit Randstad's customers, which would undoubtedly result in irreparable harm. *See, e.g., ellSouth Teleco s., nc. v. MC Metro ccess Trans ission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (recogni ing that the "loss of customers and goodwill is an irreparable injury"); *eartland Pa ent S s., LLC v. Stoc ell*, 446 F. Supp. 3d 1275, 1285 (N.D. Ga. 2020) (finding irreparable harm where former employee was "facing unfair competition from a direct competitor that is capitali ing on HPS significant investment of time and money in Stoc well s development as a ice President at HPS, which cannot be remedied at law"); *Pierce v. ndus. oiler Co.*, 252 Ga. 558, 558, 315 S.E.2d 423, 424 (1984) (enjoining employee who wor ed for competitor because employment in capacity that violated non-compete presented irreparable harm). Accordingly, Randstad should not be forced to endure wee s or months of irreparable harm in order for discovery to proceed in the usual course.

Fourth, Robles' burden to respond to the expedited discovery requests would be minimal, absent widespread violations of or interference with Randstad's agreements. Robles resigned from Randstad on September 8, 2020. Thus, information responsive to Randstad's requests should be minimal absent widespread violations of her Agreement. Moreover, many categories of requested documents and information are easily retrievable and should not impose an excessive burden on Robles, even with expedited discovery deadlines. Randstad has attached its proposed expedited discovery requests as **E i it 1 2** to this Motion.

3

n sum, Randstad requests that the Court grant its motion and enter an order finding that good cause exists to authori e limited expedited discovery, requiring Robles to respond to Randstad's written discovery requests and produce responsive documents within 14 days of service, and directing that general discovery shall commence immediately.  A proposed order is attached for the Court's convenience.

Respectfully submitted,

_/s/ Robert C. Stevens_____
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056


_Counsel for Plaintiff Randstad Technologies, LLC_

Dated:  October 1, 2020

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. 2106125** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 1, 2020, he caused copies of the foregoing

Plaintiff's Emergency Motion for Expedited Discovery to be served on Robles by email and mail

(overnight delivery specified) at the following addresses:

> Lisette Robles
> Larobles1@gmail.com
> 1319 W. 12th Street
> Tempe, AZ 85281

> */s/ Robert C. Stevens*
> Robert C. Stevens
> Counsel for Randstad

6

# EXHIBIT 1

## SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **FILE NO. 2106125** |
| | ) | |
| **LISETTE ROBLES,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

### PLAINTIFF S SET OF E PEDITED
### INTERROGATORIES TO DEFENDANT

Plaintiffs Randstad Technologies, LLC ("Randstad"), by and through its attorneys and pursuant to O.C.G.A. § 9-11-33 of the Civil Practice Act, request that Defendant Lisette Robles ("Robles") provide written answers to the following interrogatories to Seyfarth Shaw LLP, 1075 Peachtree Street, N.E., Suite 2500, Atlanta, Georgia 30309, within fourteen (14) days of the date of service of these requests or as otherwise ordered by the Court.

### DEFINITIONS AND INSTRUCTIONS

1. "Randstad" or "Plaintiff" shall mean Randstad Technologies, LLC, including its parent, subsidiary or affiliated companies, and its and their respective officers, directors, employees, representatives, agents, and attorneys, and all other persons acting at the direction or on behalf of it or them.

2. "Beacon Hill" shall mean Beacon Hill Staffing Group, LLC, including its parent, subsidiary or affiliated companies, and its and their respective officers, directors, employees, representatives, agents, and attorneys, and all other persons acting at the direction or on behalf of it or them.

65864074v.2

3.     "Agreement" shall mean Randstad's "Employee Non-Competition and Confidentiality Agreement" executed by Robles.

4.     "Customer" shall mean businesses and organi ations with which Randstad has placed Talent, and as otherwise defined in the Agreement and or commonly used in the staffing industry and or at Randstad.

5.     "Talent" shall mean direct hire candidates and temporary employees placed with Customers, and as otherwise defined in the Agreement and or commonly used in the staffing industry and or at Randstad.

6.     "Communication(s)" shall mean the giving, receiving, transmitting, or exchanging of information. This definition includes, without limitation, all telephone and in-person conversations, all written correspondence, all electronic mail exchanges, all text messages, all messages on messaging and chat platforms including but not limited to Lin ed N, Faceboo , and gmail, all advertisements, including advertisements in print, in radio, on television, over the internet, all written memoranda, and documents, notes, or memoranda which memoriali e or refer to any such communication.

7.     "Complaint" shall mean the Complaint filed by Randstad in the above-captioned matter.

8.      n the event that your answer to any of these  nterrogatories is to the effect that investigation is continuing, state:

> (a)     the identity of every person involved in conducting such investigation; and
>
> (b)     the nature of the investigation (    , whether documents are to be reviewed, witnesses interviewed,     )

9.    These interrogatories are deemed to be continuing in nature, so that with respect to any interrogatory or part thereof as to which Defendant, after responding, discovers additional information, Defendant shall supplement their answers immediately after acquiring such information.

## **INTERROGATORIES**

## **INTERROGATORY NO. 1**

dentify all Randstad property in your custody, possession, or control.

## **ANS ER**

## **INTERROGATORY NO. 2**

dentify all agreements between you and Beacon Hill.

## **ANS ER**

## **INTERROGATORY NO.**

dentify all persons with whom you have had any communications about your resignation from Randstad, your hiring by or employment with Beacon Hill, and or your Agreement.

## **ANS ER**

## **INTERROGATORY NO.**

dentify all telephone numbers, cloud storage sites, USB devices, e-mail addresses and chat messaging platforms, such as Lin ed N, Faceboo  messenger, gchat, Discord, WeChat, Line, or similar services, Robles has used from  uly 1, 2020 to the present.

## **ANS ER**

## **INTERROGATORY NO. 5**

To the extent not otherwise produced in response to Randstad's Requests for Production, identify all communications between you and any and all Randstad Customers or Talent from

3

September 1, 2020 to the present, including: (a) the date of the communication; (b) the method of the communication (e.g., telephone, e-mail, or in-person), (c) if by telephone, the phone number called and the phone number from which the call was made; (d) the purpose and content of the communication; and (e) all documents relating to the communication.

**ANS   ER**

**INTERROGATORY NO. 6**

To the extent not otherwise produced in response to Randstad's Requests for Production, identify all communications from  uly 1, 2020 to the present where you communicated with a Randstad employee about leaving Randstad or joining Beacon Hill or where you recommended that Beacon Hill contact any current or former Randstad employee, including: (a) the date of the communication; (b) the method of the communication (e.g., telephone, e-mail, or in-person), (c) if by telephone, the phone number called and the phone number from which the call was made; (d) the purpose and content of the communication; and (e) all documents relating to the communication.

**ANS   ER**

**INTERROGATORY NO.**

 dentify your duties for Beacon Hill, including your job title, the date Beacon Hill offered you employment, the date you accepted, who interviewed you, job duties, direct reports, indirect reports, regions offices under her supervision, and her supervisors.

**ANS   ER**

**INTERROGATORY NO.**

To the extent not otherwise produced in response to Randstad's Requests for Production, identify all communications about your wor  for Beacon Hill, your resignation from Randstad, your hiring by or employment with Beacon Hill, and or your Agreement, including: (a) the date of the communication; (b) the method of the communication (e.g., telephone, e-mail, or in-person), (c) if by telephone, the phone number called and the phone number from which the call was made; (d) the purpose and content of the communication; and (e) all documents relating to the communication.

**ANS   ER**

65864074v.2

**INTERROGATORY NO. __**

dentify and describe in detail any and all instructions, recommendations, or guidance that Beacon Hill provided to you regarding your departure from Randstad, such as whether to provide notice, whether to change or not change your Lin ed n profile, when and whether to contact your former clients, and any information about providing notice of your resignation to Randstad.

**ANS ER**


**INTERROGATORY NO. 10**

s it your contention that the Agreement is unenforceable    f so, identify why you contend the Agreement is unenforceable, including all material facts underlying your contention.

**ANS ER**


Respectfully submitted,

_R    r_____
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056


r P        R   d   d T            LL

Dated:  October 1, 2020

65864074v.2

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. 2106125** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on October 1, 2020, he caused copies of the foregoing

Plaintiff's Set of Expedited  nterrogatories to Defendant to be served by email and Federal

Express to Robles at the following address:

Lisette Robles
Larobles1@gmail.com
1319 W. 12th Street
Tempe, AZ 85281

_R    r_
Robert C. Stevens
Counsel for Randstad

6

# EXHIBIT 2

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **FILE NO. 2106125** |
| ) | |
| **LISETTE ROBLES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**PLAINTIFF S SET OF E PEDITED RE UESTS**
**FOR PRODUCTION TO DEFENDANT**

Plaintiffs Randstad Technologies, LLC ("Randstad"), by and through its attorneys and pursuant to O.C.G.A. § 9-11-34 of the Civil Practice Act, requests that Defendant Lisette Robles ("Robles") produce the documents identified and described below for inspection and copying at the offices of Seyfarth Shaw LLP, 1075 Peachtree Street, N.E., Suite 2500, Atlanta, Georgia 30309, within fourteen (14) days of the date of service of these requests or as otherwise ordered by the Court.

**DEFINITIONS AND INSTRUCTIONS**

1.    "Randstad" or "Plaintiff" shall mean Randstad Technologies, LLC, including its parent, subsidiary or affiliated companies, and its and their respective officers, directors, employees, representatives, agents, and attorneys, and all other persons acting at the direction or on behalf of it or them.

2.    "Beacon Hill" shall mean Beacon Hill Staffing Group, LLC, including its parent, subsidiary or affiliated companies, and its and their respective officers, directors, employees,

representatives, agents, and attorneys, and all other persons acting at the direction or on behalf of it or them.

3.      "Agreement" shall mean Randstad's "Employee Non-Competition and Confidentiality Agreement" executed by Robles.

4.      "Customer" shall mean businesses and organi ations with which Randstad has placed Talent, and as otherwise defined in the Agreement and or commonly used in the staffing industry and or at Randstad.

5.      "Talent" shall mean direct hire candidates and temporary employees placed with Customers, and as otherwise defined in the Agreement and or commonly used in the staffing industry and or at Randstad.

6.      "Communication(s)" shall mean the giving, receiving, transmitting, or exchanging of information. This definition includes, without limitation, all telephone and in-person conversations, all written correspondence, all electronic mail exchanges, all text messages, all messages on messaging and chat platforms including but not limited to Lin ed N, Faceboo , and gmail, all advertisements, including advertisements in print, in radio, on television, over the internet, all written memoranda, and documents, notes, or memoranda which memoriali e or refer to any such communication.

7.      "Complaint" shall mean the Complaint filed by Randstad in the above-captioned matter.

8.      All responsive documents within the possession, custody or control of Defendant, as defined above, shall be produced.

9.      With respect to each document otherwise responsive to a request to produce which has been lost or destroyed since its preparation or receipt, identify the document, state the

2

request for production to which it would otherwise be responsive, and give the full particulars or circumstances whereby the document was lost or destroyed.

10.     For those produced documents that require other documents to render the produced documents either comprehensible or not misleading, you are requested to include such other documents as well.

11.     These requests are deemed to be continuing in nature, so that with respect to any request or part thereof as to which Defendant, after responding, discovers additional responsive documents, Defendant shall produce such documents immediately after acquiring   nowledge of their existence or advise in writing as to why such additional documents cannot be provided immediately.

## RE   UESTS FOR DOCUMENTS

**RE   UEST NO. 1**

All Randstad property in your custody, possession, or control.

**ANS   ER**


**RE   UEST NO. 2**

Any and all documents relating to, reflecting or containing communications between you and any person affiliated with Beacon Hill since   uly 1, 2020.

**ANS   ER**


**RE   UEST NO.**

Any and all documents and communications between you and any person or entity to whom you provided staffing services while employed at Randstad. This request is limited to documents and communications sent on or after   uly 1, 2020.

**ANS   ER**

3

**RE UEST NO.**

All documents relating to your employment with Beacon Hill, including your personnel file, offer letter, onboarding documents (such as email and office setup), the job description for your position, agreements with Beacon Hill, expense reports, any applicable organi ational charts, and any documents outlining your duties or the performance of your duties for Beacon Hill.

**ANS ER**


**RE UEST NO. 5**

Any and all documents relating to your wor on behalf of, or in coordination with, Beacon Hill.

**ANS ER**


**RE UEST NO. 6**

Any and all documents and communications involving you relating to Randstad or its Customers, Talent, and or employees from uly 1, 2020 to the present.

**ANS ER**


**RE UEST NO.**

All documents evidencing voice call records and text message records for your phone from uly 1, 2020 to the present.

**ANS ER**


**RE UEST NO.**

Any and all documents relating to or referenced in your Answers to Randstad's Set of Expedited nterrogatories.

**ANS ER**

Respectfully submitted,

_____R____r_____
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Dated:  October 1, 2020

5

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) |
| | ) |
|         **Plaintiff,** | )   **CIVIL ACTION** |
| | ) |
| **v.** | )   **FILE NO. 2106125** |
| | ) |
| **LISETTE ROBLES,** | )   **JURY TRIAL DEMANDED** |
| | ) |
|         **Defendant.** | ) |
| | ) |

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 1, 2020, he caused copies of the foregoing

Plaintiff's Set of Expedited Requests for Production to Defendant to be served by email and

Federal Express at the following address:

> Lisette Robles
> Larobles1@gmail.com
> 1319 W. 12th Street
> Tempe, AZ 85281


                           *R   r*
                           Robert C. Stevens
                           Counsel for Randstad

6

ID# 2020-0106437-CV
⚡ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**

C. LaTain Kell Sr. - 49
OCT 01, 2020 04:28 PM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| Randstad Technologies, LLC,<br>        Plaintiff, | * | CIVIL ACTION FILE NUMBER |
| | * | 20-1-6125-49 |
| VS. | * | |
| | * | |
| Lisette Robles,<br>        Defendant. | | |

## <u>SHOW CAUSE AND RULE NISI ORDER</u>

It is hereby ordered that each of the parties be and appear before Presiding Senior Judge Adele Grubbs of the Superior Court of Cobb County on the **5th day of October 2020 at 3:30 p.m. in Courtroom 4400, 4th Floor**, Cobb Superior Court, to show cause, if any, why the prayers of the within the Plaintiff's Motion For Temporary Restraining Order should not be granted. The hearing will be held in open Court, however **appearance via Zoom is preferred. Pro Se Defendant is directed to send an email to** <u>presidingjudge@cobbcounty.org</u> **to request a Zoom meeting invitation.**

The question of whether or not an emergency exists is reserved for the Judge that Presides over this Rule Nisi hearing.

SO ORDERED this 1st day of October, 2020.

_____
JAMES BODIFORD
SENIOR JUDGE, STATE OF GEORGIA
PRESIDING IN COBB SUPERIOR COURT
COBB JUDICIAL CIRCUIT

ID#2020-0106950-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**20106125**

C. LaTain Kell Sr. - 49
OCT 02, 2020 03:51 PM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | **FILE NO. 2106125** |
| | ) | |
| **LISETTE ROBLES,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S RETURN OF SERVICE ON DEFENDANT LISETTE ROBLES

Plaintiff Randstad Technologies, LLC ("Randstad") provides notice that, on October 2, 2020, Benjamin Fink of Berman Fink Van Horn, P.C. informed Randstad that he would accept electronic service of the summons and complaint on behalf of Defendant Lisette Robles. Randstad certifies that, on October 2, 2020, counsel for Randstad provided copies of all filings in this matter, including the summons and complaint, to Mr. Fink. Thus, Defendant Robles is deemed to be served on October 2, 2020.

*[signature block on following page]*

Respectfully submitted,

*/s/ Robert C. Stevens*
Robert C. Stevens (Georgia Bar No. 680142)
bstevens@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056


*Counsel for Plaintiff Randstad Technologies, LLC*

Dated:  October 2, 2020

2

**SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

_____
                                                    )
**RANDSTAD TECHNOLOGIES, LLC,**      )
                                                    )
              **Plaintiff,**                        )        **CIVIL ACTION**
                                                    )
**v.**                                              )        **FILE NO. 2106125**
                                                    )
**LISETTE ROBLES,**                      )        **JURY TRIAL DEMANDED**
                                                    )
              **Defendant.**                      )
                                                    )
_____  )

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 2, 2020, he caused a copy of the foregoing

Plaintiff's Return of Service on Defendant Lisette Robles to be served on Defendant by the

Court's CM/ECF filing portal at the following address:

> Benjamin Fink
> Berman Fink Van Horn P.C.
> 3475 Piedmont Rd. N.E.
> Suite 1100
> Atlanta, GA 30305

> _/s/ Robert C. Stevens_
> Robert C. Stevens
> Counsel for Randstad

66139021v.1