# EXHIBIT A

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

**IN THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RANDSTAD TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LISETTE ROBLES,<br><br>Defendant. | CIVIL ACTION FILE NO:<br>1:20-cv-0415-SCJ |

**DECLARATION OF LISETTE ROBLES**

I, Lisette Robles, declare, upon personal knowledge and under penalty of perjury, that the following is true and correct:

1.

My name is Lisette Robles. I am a resident of the State of Arizona. I voluntarily and freely make this Declaration on my own personal knowledge for use as evidence in relation to the above-captioned matter and for any and all other uses and purposes authorized by law. I am over the age of eighteen years, am suffering from no legal disability, and am competent and authorized to make this Declaration and to testify to the statements contained herein.

## **Personal Background**

2.

I am a single mother to my 11-year-old son, Nicholas (Nick). I separated from Nick's father in 2010 and we signed a Custody Agreement. After I became employed by Plaintiff Randstad Technologies, LLC ("Randstad"), in 2019, Nick's father moved the court to modify the Custody Agreement to prohibit me from relocating more than 100 miles from the home I lived in at the time the order was entered, or from relocating out of the state of Arizona. The court granted the requested modification. I get minimal child support payments from Nick's father - $363 a month and an additional $27 towards arrears that he owes me - which is not sufficient to support him.

3.

The modified Custody Agreement was entered by the Maricopa County Superior Court in May 2019 (the "Modified Custody Agreement"). *Robles v. Gonzalez,* Case No. FC2009-006425. I am now prevented from moving more than 100 miles from my home in Tempe, AZ. Practically speaking, that would be difficult anyway, as under our custody orders Nick spends two weekdays per week with his father and I am required to personally pick him up. It would be impossible to live

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

any further away from his father because that would require me to spend an inordinate amount of time traveling to and from his house.

4.

I must be able to work in the Phoenix area to provide for my family, including both Nick and my parents. I sold my home about five years ago to move in with my parents and help them due to financial troubles they were experiencing brought on by health issues. Both of my parents make moderate incomes and they were unable to cover their medical expenses and keep their home. My sister, who is pregnant and due in November, also lives with us. I support the major household expenses through my income, including the mortgage and all groceries and normal household maintenance. If I am unable to work, we all risk losing health insurance, shelter and ability to buy food for the family.

5.

Under the Custody Order and continuing under the Modified Custody Order, I am required to maintain the health insurance for Nick and I am the main decision maker when it comes to his health and anything surrounding major medical decisions. Because of the medical issues Nick has, having the health insurance coverage that is currently provided through my employment is critical in order to provide the medical attention he needs. Losing health insurance would be a major

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

financial struggle and put me in violation of my custody arrangement, and more importantly may jeopardize Nick's health.

6.

The staffing business generally centers around metropolitan areas, which provide the types of companies (customers) in need of talent and the types of talent needed to make placements for those customers.

7.

If I cannot work for clients that are located outside of 25 miles from the office I worked at for Randstad (before the COVID-19 pandemic) because my current employer's office or my residence is within the 25 miles of Randstad's office, the nearest metropolitan area that would provide similar staffing industry opportunities is Tucson, Arizona. Tucson is approximately 114 miles from my house and an estimated two-hour drive in each direction. I cannot move to Tucson without violating the Custody Agreement.

8.

Additionally, as a single mother, it is not feasible for me to travel more than 100 miles each way to work in the Tucson area while maintaining a residence in Tempe, Arizona simply to work in a metropolitan area other than the one in which I worked at Randstad.  I would be unable to take Nick to his medical appointments,

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

handle the pick-ups required by the Custody Agreement, or support my parents and sister that require my income to have a home and food.

9.

The ability to work in the staffing industry is essential to my livelihood, particularly considering my skills and the ongoing record unemployment rates due to the COVID-19 pandemic.

10.

Nick recently had surgery, which included a liver biopsy for a gastrointestinal issue he is experiencing. My continued employment is essential to my ability to pay the medical bills associated with that procedure and his continued care. Health insurance through my employer is also critical to maintain. Additionally, Nick's doctors are all within 15 minutes of our home, and it is necessary that we live close to the specialists that are treating Nick.

11.

My personal savings is limited to approximately $30,000.

12.

If I cannot work from home or if I am required to work more than 25 miles from Randstad's office in Phoenix and have to move to a new market, I will incur tremendous additional expense securing childcare and commuting more than 100

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

miles each way. This does not make any sense as most of the placements I made in 2020 at Randstad were in San Francisco, which is 750 miles away from Phoenix.

13.

Since I cannot move without violating the Custody Agreement, I could be forced to seek employment in another industry in which I would make significantly less money. I would be unable to pay the medical bills and other costs associated with raising Nick and ensuring myself, Nick, my parents and my sister are able to continue living in our home, buying groceries, and paying household expenses.

**Staffing Industry Experience**

14.

I have worked in the staffing industry for most of my career since graduating from college in April of 2009. I learned the ins and outs of the staffing industry through these other jobs.

15.

I spent my first five years out of college at Apollo Group in Tempe, AZ and in one of my roles I managed a team of eight Faculty Recruiters who recruited for 23 University of Phoenix ground campuses.

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

16.

In 2013, I joined GO Financial and worked for three years in the auto lending business working my way up to a GO Account Manager position and learning the ins and outs of working inside a large company. As part of one of my roles as an Operations Manager, I partnered with staffing agencies to hire temporary workers during peak season, which gave me initial perspective on the staffing industry from the business side.

17.

In 2016, I joined Kforce, a staffing agency, in its Phoenix, AZ office. At Kforce I started as a Finance and Accounting Recruiter, then moved to a Sales Manager/Account Manager role over Finance, Accounting and Healthcare, and finally was promoted to Strategic Account Management for their Premier Partners division.

18.

As a Premier Partner Account Manager at Kforce, I managed a specific client, Wells Fargo. For this client I was one of two account managers that managed all of their information technology ("IT") placements in Arizona.

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

19.

A former colleague at Kforce mentioned Randstad was hiring and introduced me to Marcus Pinchera, Area Managing Director, who hired me to join Randstad. I was hired partly based upon my experience in the staffing industry and could hit the ground running. There is nothing unique in the way Randstad, as opposed to other staffing companies, conducts business.

**Role at Randstad**

20.

I started my employment with Randstad in January 2018 as an Account Manager. As an Account Manager I placed IT candidates. To my knowledge, and at least with respect to the customers I dealt with while at Randstad, the customers had no exclusive relationships with staffing firms and the customers gave the opportunities to other staffing companies, as they were looking for the best candidate to fill their positions.

21.

In connection with my employment at Randstad, I was required to sign the Employee Non-Competition and Confidentiality Agreement (the "Employment Agreement").

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

22.

The only office of Randstad that I was ever assigned to or performed work at on behalf of Randstad during the 12 months prior to the end of my employment was Randstad's Phoenix, Arizona branch at 3800 N. Central Ave suite c-100, Phoenix, AZ 85012.

23.

During my employment at Randstad, I did not supervise or manage any other personnel.

24.

The primary client I worked with at Randstad is referred to as "Client A" in Randstad's Complaint.[1] Client A is one of the 10 largest companies in the United States and works with numerous staffing companies, including Randstad. Although I will not be working or any way involved with Client A, even though my current employer has worked with Client A in the past. I spent at least 80% of my working hours for Client A in approximately my last year at Randstad. Client A has an IT division focused on the delivery of health services. I worked primarily on a project

[1] I will use the designation "Client A" even though its identity is not confidential or a trade secret of Plaintiff. In fact, "Client A" has its own website in which it promotes job opportunities throughout the world, including the Phoenix market, they use numerous staffing companies and they are "generally known to the public or Randstad's competitors."

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

based out of San Francisco for Client A related to the IT aspects of an oncology project.

25.

I was Client A's primary contact for its Arizona and San Francisco locations. Previously, Client A had decided to pull its work from Randstad as a result of issues with another of Randstad's Account Managers dedicated to Client A's San Francisco site. Client A agreed to give Randstad another opportunity on the project if I was the primary point of contact for the initiative for Client A's Arizona and San Francisco offices. In 2020, I placed approximately 11 full time employees in San Francisco for Client A's oncology project. I also placed one employee in Phoenix, Arizona and one in Houston, Texas. I placed only one permanent employee and two temporary employees at Company A's Phoenix facility in the last year.

**<u>Resignation from Randstad</u>**

26.

I was an employee at will at Randstad. I resigned, as I was entitled to do, on September 8, 2020. I decided to resign from Randstad because of a lack of career opportunity, uninspiring company culture, and lack of professional respect and support from my leadership team.

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

**Role at Beacon Hill**

27.

On September 14, 2020, I began my current employment at Beacon Hill Staffing Group, LLC ("Beacon Hill") as an Account Executive and all my work relates to a single prospective client, Client X, located in Arizona, but more than 25 miles from the Randstad office to which I was assigned. I have not yet made any placements at Beacon Hill.

28.

Client X is in an entirely different industry than Client A or any other company that I made placements at on behalf of Randstad.

29.

Client X's office is over 25 miles away from the office to which I was assigned at Randstad.

30.

My role with Client X will also include making engineering placements, which I did not do for Randstad.

31.

I do not believe there is any overlap between the services Client A provides with the services that Client X provides. I am not aware of any way that the work I

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

am doing for Client X could conceivably result in any loss of business for Randstad or otherwise have any impact on Randstad, other than fair competition.

32.

At no time did I solicit or attempt to solicit Client A to move its business or the oncology project from Randstad, either prior to or following my resignation from Randstad. To the contrary, when Client A called me after I left Randstad, I specifically told my contact at Company A that I would not be working with them.

33.

Randstad references an e-mail exchange between me and my contact at Client A on the Friday before Labor Day as evidence that I tried to take the business. Randstad is mistaken. During my employment at Randstad, I communicated with my contact at Client A several times per day. On the Friday before Labor Day, we were trading e-mails and I had sent an e-mail regarding various issues we needed to discuss. Separately, in a phone call with him, he stated that it was the Friday before a long weekend and that everything could wait until the following week. Based on the call, I sent the e-mail, telling him that I would wait until the following Tuesday to "bug" him about the various issues we needed to discuss. I thought it was inappropriate to tell him I was resigning from Randstad. The e-mail had absolutely nothing to do with trying to take any Client A business with me.

34.

Randstad and Client A's offices were both closed on Monday for the Labor Day holiday. I resigned my employment with Randstad that Tuesday, September 8. Randstad has accused me of intentionally moving the call with my contact at Client A and timing it with my resignation. As explained above, that is untrue and is not the reason the call was moved. Randstad has access to and could review my other e-mails with this gentleman that would have given context to and explained the lone e-mail they chose to provide to the Court, I no longer have access to those emails or my Randstad email account.

35.

I understand that Randstad immediately called and notified Client A on September 8 that I had resigned because my contact called me and left me a voicemail on my personal cell phone the same day. A copy of a transcript of the voice mail message is attached hereto as Exhibit A.

36.

When I returned the call, I informed him that I had left Randstad and also informed him that I would no longer be working with him or Client A.

37.

I have not and do not plan to do business with or on behalf of Client A.

38.

I have not solicited or attempted to solicit any other clients with whom I worked at Randstad, and I do not intend to do so.

39.

At the conclusion of my employment with Randstad, I returned all of the company's property and my manager confirmed receipt via text message. *See* Text Messages attached hereto as Exhibit B. I also did take, and do not have in my possession, any documents concerning Randstad or its business or clients.

40.

I did not take any confidential documents from Randstad. I am not using any confidential information (to the extent it exists) and have no interest in the purported confidential information identified by Randstad. Client A is one of the ten largest companies in the nation. There is nothing secret or confidential about the fact that Client A hires thousands of temporary and permanent employees every year or that it uses staffing firms like Randstad and others to do so.

**<u>The Staffing Industry</u>**

41.

In the staffing industry, identities of clients, hiring managers, and candidates, the existence of job openings, and contact information for the players in the industry

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

all are publicly available. There exist subscription services that identify hiring managers and their contact information, as well as services that identify particular staffing company's customers. It is only a click away. Moreover, in the staffing industry, client relationships are not exclusive and clients work with several staffing companies at the same time on the same project or placements. Staffing clients and candidates alike simply do not tie themselves to a particular placement agency, as both are trying to find the most suitable match from the broadest market, no matter who makes the placement. Other staffing companies, including my current employer and my previous employer, Kforce, provide the same services to the same clients at the same time.

42.

There is nothing unique, special, or different at Randstad as a staffing company. I did not learn anything at Randstad that is unique, special or different that will give me an unfair advantage in the Phoenix market or otherwise. I learned the ins and outs of the staffing business prior to my employment with Randstad, which is a reason they hired me. I know that Randstad hires employees directly from other staffing companies. For example Andrea Belkin, who went from AppleOne Employment Services (staffing), to Kforce (again staffing) to RemX Financial

Staffing (again staffing) to Vaco (again staffing) and hired by Randstad US (again staffing). Those roles were in Phoenix and Tempe Arizona.

**<u>Randstad's Selective Enforcement of Its Restrictive Covenants</u>**

43.

When I resigned from Kforce and joined Randstad, despite my restrictive covenants with Kforce, Randstad informed me that I could target the Phoenix market as long as I did not solicit or do any staffing work for Wells Fargo or take any clients from my former employer, Kforce. I relied on Randstad's advice and followed it when accepting the position at Randstad.

44.

I also understood this to be how Randstad viewed the restrictive covenants contained in its own employment agreements. For example, my former colleague Latifah Rainey left Randstad USA after two and a half years as a Market Manager in Phoenix and moved directly to another staffing firm, Ultimate Staffing to take a Branch Manager position in Phoenix. I understand that they have not pursued her.

45.

Another colleague, Matthew Peterson, left Randstad Technologies US's Scottsdale office in January of this year and moved to IMPACT Technology Recruiting at its Phoenix office. I understand that they have not pursued him.

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

46.

Jordan Gaspari left Randstad Technologies US's Scottsdale office in January 2018 to form his own IT staffing company, Exclusent, Inc., also in Scottsdale. I understand that they have not pursued him.

47.

I also did a LinkedIn search of other Randstad employees that had come from or gone to other staffing companies. I located:

- Megan Kennedy, who worked at Kforce for nearly three years in Phoenix when she was hired by Randstad USA as an executive recruiter. In February of 2020, after one year and nine months with Randstad, she moved on to a recruiter role for Community Medial Services in Scottsdale, Arizona.

- Ken Stakis, who went from Kforce to Experis, another staffing firm, to Randstad USA, then to Harvard Group International (also in staffing) and then Compass Group USA (again staffing). All these positions were in Phoenix and Scottsdale.

- Michelle Rogers, who worked at VincentBenjamin, in staffing, in Phoenix, and was hired by Randstad USA and then moved to another staffing firm called Verticalmove, Inc. Those roles were in Phoenix, Tempe and Scottsdale, Arizona.

- Jamie Apel, who went form Randstad's Tempe office directly to Kforce in Phoenix and then Robert Half in Phoenix. All roles were accounting roles.

Executed on this 7th day of October, 2020.

DocuSigned by:

B9403C10E61A4B0...

Lisette Robles

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

# EXHIBIT A

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

"Hey girl. You're gettin me a little nervous. Um, just talked to Jeff Panning cut you guys off and can you just give me a call so I know what you're doing and if you're okay. Thank you."



DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

# EXHIBIT B

DocuSign Envelope ID: 330782AC-6DC6-4230-A928-E1FD6303BA42

1:44 LTE

**New iMessage** Cancel

To: Marcus Pinchera

Just to circle back, all equipment has been shipped. You should receive it at your home sometime tomorrow.

Hey, thanks Lisette.

Wed, Sep 23, 4:57 PM

I received the equipment, thanks Lisette.

Great.

Delivered

iMessage