# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **MEDICAL DOCTOR ASSOC'S, LLC,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 1:18-CV-3576-SCJ** |
| **v.** | : | |
| **DEBBIE KARESH,** | : | |
| **Defendant.** | : | |

**ORDER**

This matter appears before the Court on an Motion for a Temporary Restraining Order (Doc. No. [2]) by Plaintiff, Medical Doctor Associates, LLC, ("MDA"). The Court held hearings on this matter on July 30, 2018, and August 6, 2018.[1]

## I. BACKGROUND

Plaintiff is a "medical staffing company that provides locum tenens, temporary, and temporary-to-permanent physician and advanced practice healthcare provider . . . staffing to hospitals, clinics, and medical practices on a nationwide and

---

[1] Although styled as a Motion for a Temporary Restraining Order, Plaintiff did not certify "in writing any efforts made to give notice and the reasons why it should not be required." See Fed. R. Civ. P. 65(b)(1)(B). Thus, the Court scheduled a hearing in this matter and ordered Plaintiff to provide Defendant with notice. See Doc. No. [4]. Defendant appeared at both hearings, the first time *pro se* and the second time represented by counsel.

international basis." Doc. No. [1], p. 2, ¶5. To perform these services Plaintiff "utilizes Recruiters to cultivate and maintain relationships with healthcare personnel as well as physicians, hospitals, clinics, and medical practices with healthcare staffing needs." Id. Defendant was a Physician Recruiter for Plaintiff in its Georgia office. Id. p. 3, ¶7. As part of her employment, she entered into an Employment Agreement ("the Agreement") with Plaintiff. Id. p. 4, ¶11; Doc. No. [1-1].

The Agreement provided that for 12 months after the termination of her employment, Defendant would "not directly or indirectly[ ] compete with [Plaintiff's] Business . . . within a fifty (50) mile radius" of the office(s) to which she was assigned. Doc. No. [1-1], p. 5, ¶12.2. This provision is limited to situations where Defendant is performing "services of the type" she performed for Plaintiff "and/or serving in a position where [she] might use or share Confidential Information." Id. The Agreement defined Confidential Information to include, *inter alia*, Plaintiff's "customers and prospective customers, including their identity, the identities of their employees, contractors and consultants, special needs, job orders, preferences, transaction histories, contacts, characteristics, agreements and prices." Id. p. 4, ¶11.2. Finally, the Agreement prohibited Defendant from soliciting or seeking "to provide services to any customer . . . whose identity [Defendant] learned while employed by [Plaintiff], which solicitation is for or on behalf of any entity engaged in or seeking

to be engaged in [Plaintiff's] Business" for 12 months following the termination of her employment. Id. pp. 5–6, ¶12.3(c)(i).

On April 13, 2018, Defendant resigned her employment with MDA. Doc. No. [1], ¶21. Since resigning, Defendant has gone to work for DrWanted, a competitor of MDA, where she is performing healthcare staffing services. Id. p. 9, ¶22. As Defendant explained at the hearing, she recruited physicians for MDA and now performs advanced practice physician assistant ("APP") recruiting for DrWanted. However, Defendant acknowledged that Plaintiff also provides placement for APPs.

On June 14, 2018, Defendant sent a message[2] to Kathy Quinn, the corporate representative of one of MDA's customers, Wellstreet. Id. p. 9, ¶25; Doc. No. [1-2]. In the message, Defendant acknowledges that she knows Quinn because of work for MDA, and that Wellstreet is "not really entertaining other agencies." Doc. No. [1-2], pp. 2–3. Nevertheless, Defendant decided to "reach out" to Quinn and "just see" if Quinn was interested in switching, touting the more specialized services offered by DrWanted. See id.

---

[2] In the complaint, the message is characterized as a "text message," but Defendant explained that the message was sent through the social-networking website LinkedIn.



AO 72A
(Rev.8/82)

## II. LEGAL STANDARD

To be entitled to a preliminary injunction, a party must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) that the threatened injury to the moving party outweighs the harm to the non-moving party if the injunction issues; and (4) that the injunction will not disserve the public interest. MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1240 (11th Cir. 2005). Injunctive relief is an extraordinary and drastic remedy and should not be granted unless the movant clearly establishes the burden of persuasion as to each of these four factors. Siegel v. LePore, 234 F. 3d 1163, 1176 (11th Cir. 2000).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

The Agreement clearly provides that Defendant would "not directly or indirectly[ ] compete with [Plaintiff's] Business . . . within a fifty (50) mile radius" of the office(s) to which she was assigned. Doc. No. [1-1], p. 5, ¶12.2. By working for DrWanted in the Atlanta area, she has ostensibly violated this provision. But it only applies if Defendant is performing "services of the type" she performed for Plaintiff "and/or serving in a position where [she] might use or share Confidential Information." Id. During the hearing, Defendant argued that she is not performing "services of the type" she performed for Plaintiff because she recruited physicians for



AO 72A
(Rev.8/82)

Plaintiff and now recruits APPs for DrWanted. For purposes of the present motion, the Court agrees that, based on the evidence presented at the hearings, Defendant's work recruiting APPs is not a "service[ ] of the type" she performed for MDA.

But the non-compete provision also applies to any "position where [Defendant] might use or share Confidential Information." Id. Included in the definition of Confidential Information, is information relating to "customers and prospective customers," such as "their identity, . . . special needs, job orders, preferences, transaction histories, contacts, characteristics, agreements and prices." Id. p. 4, ¶11.2. Defendant's position with DrWanted is clearly one where she "might use or share Confidential Information" because she did just that by contacting Kathy Quinn at Wellstreet, one of MDA's customers. Doc. No. [1], p. 9, ¶25; Doc. No. [1-2]. In that message, Defendant encouraged Quinn to explore the possibility from switching from MDA to DrWanted. See Doc. No. [1-2], pp. 2–3.

During the first hearing, Defendant admitted that reaching out to Quinn was "wrong." Indeed, it is also a clear violation of the non-solicitation clause of the Agreement. See Doc. No. [1-1], pp. 5–6, ¶12.3(c)(i) (prohibiting Defendant from soliciting or seeking "to provide services to any customer . . . whose identity [Defendant] learned while employed by [Plaintiff], which solicitation is for or on behalf of any entity engaged in or seeking to be engaged in [Plaintiff's] Business").

During the hearing, Defendant asserted that, going forward, she would not solicit Plaintiff's customers. While this could resolve Plaintiff's concerns with the non-solicitation provision, but it would not resolve Plaintiff's concerns regarding the non-compete provision. In that separate provision, Defendant agreed not to work for a direct competitor of Plaintiff in a position one in which she "might use or share Confidential Information" for 12 months following her employment with Plaintiff. Doc. No. [1-1], p. 5, ¶12.2.

Thus, the evidence before the Court indicates Plaintiff has breached both the non-solicitation and non-compete provisions of the Agreement. But the *sine qua non* of a breach of contract claim is a valid contractual arrangement. Generally, contracts in restraint of trade are void as against public policy. Dent Wizard Int'l Corp. v. Brown, 272 Ga. App. 553, 555, 612 S.E.2d 873, 875 (2005). Restrictive covenants in employment contracts are subject to strict scrutiny---the highest level of scrutiny. Id. They will be enforced only if: "(1) the restraint is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the interests of the public." Hostetler v. Answerthink, Inc., 267 Ga.App. 325, 328(a), 599 S.E.2d 271 (2004).

The non-solicitation provision, as written, is clearly an unreasonable restraint on trade. It restricts Defendant from soliciting not only customers she actually

serviced or sought to service but also customers "whose identity [she] learned while employed by [Plaintiff]." Doc. No. [1-1], pp. 5–6, ¶12.3(c)(i). Such a non-solicitation provision is "overbroad because it prohibits Defendant[ ] from contacting not only clients that [she] serviced, but anyone whose names became known to [her] during [her] employment with Plaintiff." Morgan Stanley DW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1378 (N.D. Ga. 2001). Prior to 2011, this "single unreasonable provision in [the] restrictive covenant [would] void the entire contract." Id. at 1377–78.

But now, "a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive." O.C.G.A. § 13-8-53(d). Because a Court "may modify" an overbroad covenant, the statute is permissive and the decision is within the Court's discretion. LifeBrite Labs., LLC v. Cooksey, 2016 WL 7840217, at *6 (N.D. Ga. Dec. 9, 2016). Were the Court to excise the offending language, the non-solicitation clause would prevent Defendant from soliciting "any customer directly or indirectly serviced by [her] or sought to be serviced by [her]." Doc. No. [1-1], pp. 5–6, ¶12.3(c)(i). Such a non-solicitation clause would be a reasonable restriction, and the evidence in the record indicates that, even as rewritten, Plaintiff violated this provision. See Doc. No. [1-2], p. 2 (Defendant's message noting she "worked with [Quinn while] at MDA, though [Defendant] was . . . not [Quinn's] direct contact").



AO 72A
(Rev.8/82)

Turning to the non-compete provision, it too is overbroad because it prevents Defendant from taking any position "where [she] might use or share Confidential Information." Doc. No. [1-1], p. 5, ¶12.2. The term "Confidential Information" is, in turn, defined to include a dizzying array of information. Id. p. 4, ¶11.2 (defining "Confidential Information" as "(a) Company's business plans, strategic plans, forecasts, budgets, sales, projections and costs; (b) Company's personnel and payroll records and employee lists; (c) candidates, consultants, contractors, including lists, resumes, preferences, transaction histories and rates; (d) Company's customers and prospective customers, including their identity, the identities of their employees, contractors and consultants, special needs, job orders, preferences, transaction histories, contacts, characteristics, agreements and prices; (e) marketing activities, plans, promotions, operations and research and development; (f) business operations, internal organizational structure and financial affairs; (g) pricing structure; (h) proposed services and products; (i) contracts with customers; (j) Company customer history"; and "any and all information that Company is obligated to maintain as confidential or that Company may receive or has received from others with any understanding, express or implied, that it will not be disclosed").

Preventing Defendant from taking any position in which she "might" use such an extraordinarily broad bunch of information makes the non-compete provision



AO 72A
(Rev.8/82)

unenforceable because it "effectively prohibits [her] from working for a competitor in any capacity." Lapolla Indus., Inc. v. Hess, 325 Ga. App. 256, 264, 750 S.E.2d 467, 474 (2013); see also Arnall Ins. Agency, Inc. v. Arnall, 196 Ga. App. 414, 417, 396 S.E.2d 257, 260 (1990) (holding that the "description of the prohibited activity" is so indefinite that the resistive covenant will not be enforced). "The words render the restrictive covenant unreasonable inasmuch as they limit the activities of defendant more than is necessary to protect the plaintiff."Arnall Ins. Agency, 196 Ga. App. at 418. Where, as here, there is no evidence that Defendant had any knowledge of, or use for, all of the information covered by the term "Confidential Information," it is unreasonable for Plaintiff to restrict her from taking any position where she "might" use information covered by that term. Cf. Watson v. Waffle House, Inc., 253 Ga. 671, 672, 324 S.E.2d 175, 178 (1985) (holding that a broad anti-competition clause was reasonable because the franchisees were the "heart and soul" of the business and they participated in and had knowledge of "every facet of the business").

As discussed at the second hearing, Plaintiff argues that it only seeks to prevent Defendant from performing "performing services of the type performed" for Plaintiff and from using particular customer information gained from Plaintiff that would be economically beneficial to DrWanted. The Court concludes that such a rewritten non-compete clause would be reasonable. Thus, the Court holds that, at this stage,



AO 72A
(Rev.8/82)

Plaintiff has shown a substantial likelihood of success on its breach of contract claim as to the non-solicitation provision and the non-compete provision as both have been rewritten. As for Plaintiff's second claim—tortious interference with business relations—the Court holds that Plaintiff has not demonstrated a substantial likelihood of success at this time. While Defendant's message to Quinn could qualify as an improper statement, the evidence currently before the Court indicates that Plaintiff has not actually suffered a financial injury from the alleged interference. See FieldTurf USA Inc. v. TenCate Thiolon Middle E., 945 F. Supp. 2d 1379, 1392–93 (N.D. Ga. 2013).[3]

## B. Irreparable Harm to MDA

Next, Plaintiff must show it will suffer irreparable harm if an injunction does not issue—that is, harm that "cannot be undone through monetary remedies." Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991). Here, the irreparable injury Plaintiff asserts is a loss of goodwill and customers. Doc. No. [2], pp. 12–13. The Eleventh Circuit has repeatedly recognized such loses as an irreparable injury because it is "difficult, if not impossible, to determine" the monetary loss suffered. Ferrero, 923 F.2d at 1449; see also BellSouth

[3] In any event, whatever injury Plaintiff might suffer from improper interference by Defendant can be prevented by enforcement of the rewritten non-solicitation provision.

Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 970 (11th Cir. 2005).

As discussed above, Plaintiff presented evidence that Defendant solicited a customer she indirectly serviced for Plaintiff, and Plaintiff has reason to believe that Defendant has solicited other such customers. During the first hearing, Defendant admitted sending the message to Quinn was "wrong," and neither confirmed nor denied the latter allegation. The risk of a "significant loss of customers and goodwill" posed by the direct solicitation or servicing of former customers with whom Defendant has a working relationship is clear, and qualifies as an irreparable injury. See Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC, 605 F. Supp. 2d 1189, 1206 (N.D. Ala. 2009).[4]

## C. Balance of Potential Harms

The Court must also balance the threatened injury to the moving party against the harm to the non-moving party. MacGinnitie, 420 F.3d at 1240. By limiting the application of the restrictive covenants as discussed above, the potential harm to

[4] The danger posed by Defendant simply recruiting APPs for DrWanted is less clear. The evidence in the record does not suggest that Plaintiff would suffer a similar, significant loss of customers and goodwill, and the "asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" Siegel, 234 F.3d at 1176. This further bolsters the Court's conclusion that the non-compete provision must be rewritten to allow Defendant to continue in her current position. A preliminary injunction is an extraordinary and drastic remedy that should not be used unless Plaintiff can clearly establish each of the four factors. Siegel, 234 F. 3d at 1176.



AO 72A
(Rev.8/82)

Defendant is substantially limited. She will be prohibited from directly soliciting or servicing former customers, but will not be prevented from earning a living by working for DrWanted. The danger posed to Plaintiff by Defendant soliciting business from former customers with whom she had a working relationship outweighs any harm posed to her by preventing her from doing so. Thus, the Court holds that this factor weighs in favor of issuing a limited preliminary injunction.

**D. Public's Interest**

Finally, the Court must consider the public's interest. As mentioned above, Georgia law prohibits unreasonable restraints of trade as being contrary to public policy. They disserve the public interest by preventing free competition and preventing individuals from earning a livelihood. See Atlanta Bread Co. Int'l v. Lupton-Smith, 285 Ga. 587, 588–89, 679 S.E.2d 722, 724 (2009). But when, as here, the restraints are enforced in a way that is reasonable, the public policy concerns give way. See Delli-Gatti v. Mansfield, 223 Ga. App. 76, 79, 477 S.E.2d 134, 137 (1996). The public also has an interest in individuals fulfilling their contractual obligations. While the restrictive covenants impose some burden on Defendant, they are what she freely, contractually agreed to. In short, the evidence weighs in favor of granting a limited preliminary injunction at this time.



AO 72A
(Rev.8/82)

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order (Doc. No. [2]) is **GRANTED in part and DENIED in part**. Defendant is hereby **ENJOINED** from:

- soliciting "any customer directly or indirectly serviced by [her] or sought to be serviced by [her]" during her employment with Plaintiff, until April 13, 2019 (see Doc. No. [1-1], pp. 5–6, ¶12.3(c)(i));
- recruiting physicians for DrWanted, until April 13, 2019 (see Doc. No. [1-1], p. 5, ¶12.2); and
- directly servicing any corporate client that she communicated with during her employment with Plaintiff, until April 13, 2019.

Because the Court is issuing a preliminary injunction, Plaintiff generally must post "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed R. Civ. P. 65(c). However, the parties and the Court agree that no security bond is necessary at this time.

**IT IS SO ORDERED,** this 6th day of August, 2018.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE



AO 72A
(Rev.8/82)