IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LISETTE ROBLES,**<br><br>**Defendant.** | **CIVIL ACTION FILE NO.**<br><br>**1:20-cv-4105-SCJ** |

**ORDER**

This matter appears before the Court on Plaintiff's Emergency Motion to Remand and for Attorney's Fees (Doc. No. [4]). The Court held a hearing on the motion on October 13, 2020, via videoconference. It now enters the following order.[1]

[1] The following order addresses the remand issue only. In the October 13, 2020 hearing, the Court gave the parties until Monday, October 19, to further brief the attorneys' fees issue.

## I. BACKGROUND

Plaintiff Randstad Technologies, LLC is the former employer of Defendant Lisette Robles. Plaintiff filed this action for declaratory and injunctive relief in the Superior Court of Cobb County on September 30, 2020. See Doc. No. [1-1]. Plaintiff seeks to enforce an Employee Non-Competition and Confidentiality Agreement between it and Defendant. Id. ¶ 1. Defendant filed a notice of removal with this Court on October 5, 2020, (Doc. No. [1]), and an amended notice of removal on October 8, 2020 (Doc. No. [8]). Plaintiff now moves this Court to remand this case to the Superior Court of Cobb County because Defendant "has not and cannot establish that the amount in controversy is in excess of $75,000." Doc. No. [4], p. 1.

Defendant disagrees. Defendant states that, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Doc. No. [1], ¶ 15. (quoting Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)). Defendant states that "[t]he very basis of the injunctive relief that Plaintiff seeks is that [Defendant] allegedly solicited and took" one of Plaintiff's clients, Client A, when she left. Doc. No. [9], p. 5. Defendant has submitted

testimony that she generated revenue of approximately $380,000 in 2020 for placements at Client A. Doc. Nos. [1], ¶ 16; Doc. [1-2], ¶ 2. She also states that she "also had about another $10,000 in business with other clients." Id. In addition, she states she earned "approximately $150,000 at Randstad in 2020" and "anticipates earning approximately $100,000-125,000 in her first year at" her new employer. Doc. Nos. [1], ¶ 16; Doc. [1-2], ¶ 3. Thus, she argues, the value of the injunction "exceeds $75,000 and thus the jurisdictional amount is satisfied." Doc. No. [9], p. 5.

## II. LEGAL STANDARD

Generally, a defendant may remove an action from state court when the federal court would possess original jurisdiction over the subject matter, "except as otherwise expressly provided by an Act of Congress." 28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). District courts are to construe the removal statute narrowly. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 766 (11th Cir. 2010).

A removing defendant has the burden to establish federal jurisdiction. Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007). To meet this burden, the removing party must point to facts, not conclusory allegations. Williams v. Best Buy Co., 269 F.3d 1316, 1319-20 (11th Cir. 2001). "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." Pretka, 608 F.3d at 751.

Plaintiff's complaint seeks declaratory and injunctive relief only. See Doc. No. [1-1], p. 12. Where the amount in controversy is not clear from the face of the complaint, a defendant can remove to federal court only "if he can show, by a preponderance of the evidence, facts supporting jurisdiction." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994). Furthermore, a "[d]efendant's right to remove and [a] plaintiff's right to choose his forum are not on equal footing." Id. at 1095. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Id.

Eleventh Circuit precedent is clear: "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation *from the plaintiff's perspective*." Cohen v. Office Depot, Inc., 204

F.3d 1069, 1077 (11th Cir. 2000) (emphasis added). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." Id. Subject matter jurisdiction does not exist, however, where any benefit the plaintiff could receive from injunctive relief is "too speculative and immeasurable to satisfy the amount in controversy requirement." Leonard v. Enterprise Rent A Car, 279 F.3d 967, 973 (11th Cir. 2002) (quoting Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns, & Elecs., Inc., 120 F.3d 216, 218 (11th Cir. 1997)).

## III. ANALYSIS

In the instant case, it is undisputed that the citizenship requirement for jurisdiction is met. The only question remaining before the Court is whether Defendant has met her burden in establishing that the amount in controversy is sufficient to create federal jurisdiction over the lawsuit.

First, the Court concludes that Defendant erroneously included her own salary in the estimation of the amount in controversy in her notice of removal. See Doc. No. [1], ¶ 6 (noting Defendant "earned approximately $150,000 at Randstad in 2020" and "anticipates earning approximately $100,000-125,000 in her first year" at the new company). Because the amount in controversy must be

calculated from Plaintiff's perspective, see Cohen, 204 F.3d at 1077, Defendant's salary cannot be included in the estimation.

Absent her salary, Defendant relies upon the value of the business she was responsible for while working for Plaintiff. Defendant states:

> When [Defendant] worked at Randstad, her primary client (referred to as "Client A" in the Complaint) had generated business for Randstad of approximately $380,000 in 2020 and will likely generate as much as $500,000-600,000 in total in 2020. Ms. Robles also had about another $10,000 in business with other clients. Thus, if Randstad's revenue from Ms. Robles' clients during the remaining two years of the restrictive covenants in the Agreement is similar to the revenue generated by those clients in 2020, Randstad's gross revenue during the term of the covenants will be over $1 million.

Id. (internal citations omitted). She cites only to her own declarations to support these allegations. See id.; Doc. No. [8], ¶ 19.

Defendant cites to Tracfone Wireless, Inc. v. Gulbranson, No. 06-21903-CIV, 2006 WL 8432734 (S.D. Fla. Sept. 18, 2006), report and recommendation adopted, No. 06-21903-CV, 2006 WL 8432735 (S.D. Fla. Nov. 17, 2006) to support her contention that past profits can be considered in determining the value of the injunction to Plaintiff. Tracfone did note that, "[i]n cases dealing specifically with enforcement of non-compete agreements, district courts have assessed the value

of the injunction relief to plaintiffs by looking to the 'profits earned by the employer on business generated by the employee during the period immediately preceding his termination.'" Id. at *2 (quoting Absolute Mach. Tools, Inc. V. Clancy Mach. Tools, 410 F. Supp. 2d 665, 669 (N.D. Ohio 2005)).

However, the only binding authority Tracfone cites for this proposition is Premier Industries Corp. V. Texas Industrial Fastener Co., 450 F.2d 444 (5th Cir. 1971).[2] In Premier Industries, the former Fifth Circuit stated that the district court could have found the amount in controversy was met via several approaches, including value of the former employer's lost sales revenue or the value of the future effect of breach on the former employer's other contracts with its sales agents. Id. at 447. While this Court is not suggesting that an estimation of lost profits (or revenue) can *never* factor into the amount in controversy calculation in these cases, more recent Eleventh Circuit precedent makes it clear that any such an estimation cannot be speculative. See, e.g., Leonard, 279 F.3d at 973.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The Court finds that Defendant's estimation of the value of the declaratory and injunctive relief to Plaintiff is too speculative and too temporarily remote from the time of removal.[3] See Saville v. Lonesource, Inc., No. 1:11-CV-4398-TCB, 2012 WL 13015092, at *3 (N.D. Ga. Feb. 9, 2012) (finding that defendant's evidence of the amount in controversy was too speculative where it was based on past commissions earned by the plaintiff and the "potential commission" the plaintiff could earn if the injunction was entered); Pretka, 608 F.3d at 751 ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later."). There are simply too many unknown variables: Client A may discontinue its relationship with Plaintiff

---

[3] This issue of speculative damages is common where a party seeks to enforce a non-competition covenant by filing for injunctive relief. See, e.g., Wilson v. Benyon Sports Surfaces, Inc., No. 1:11-cv-2002-RWS, 2011 WL 6014666, at *3 (N.D. Ga. Dec. 1, 2011); Crump Insurance Servs., Inc. v. All Risks, Ltd., No. 10-cv-1589-JOF, 2010 WL 4810281, at *6 (N.D. Ga. Nov. 19, 2010); Personnel Options, Inc. v. The Reserves Network, Inc., No. 3:10-cv-71-WSD, 2010 WL 2662733, at *2 (N.D. Ga. June 30, 2010); Huff v. Alfa Insurance Corp., No. 1:09-cv-584-JEC (N.D. Ga. June 25, 2009); Conable v. U.S. Foodservice, Inc., No. 1:05-cv-2887-MHS, 2006 WL 149052, at *2 (N.D. Ga. Jan. 18, 2006); D & R Party, LLC v. Party Land, Inc., 406 F. Supp. 2d 1382, 1384 (N.D. Ga. 2005). In each of these cases, the defendant removed, based on diversity jurisdiction, the plaintiff's state-court complaint, which sought only declaratory and injunctive relief from restrictive covenants. In all six cases, the actions were remanded to the state court because the removing defendant could not show by a preponderance of the evidence that the amount-in-controversy requirement was met.

altogether (indeed, it has already "paused" its projects), and there is no guarantee that any of Defendant's other former clients will continue business with Plaintiff—certainly no guarantee that they will generate the same *amount* of business going forward. See, e.g., Gallant v. CMGRP, Inc., No. 1:16-CV-689-TCB, 2016 WL 10920018, at *2 (N.D. Ga. Oct. 12, 2016) (holding that "[t]he Court cannot assume that Plaintiffs' benefit from allegedly soliciting two clients away from [the former employer] can be measured solely by reference to [the former employer's] 2015 revenues from those clients"). Thus, Defendant's estimation of the amount in controversy is "pure conjecture," and not sufficient to confer jurisdiction on this Court. Id.

Defendant argues that the above-referenced cases (and indeed, all of the non-compete cases that have been heard in the Northern District of Georgia) are distinguishable because they involved former employees suing to invalidate non-compete agreements, rather than a former employer suing to enforce one. Doc. No. [9], pp. 5–6. The Court disagrees. The measure of value to an employer-plaintiff (the lost value of profit or revenue) and the value to an employee-plaintiff (the value gained from soliciting clients away) are but two sides of the same coin. Regardless of which direction the legal action flows, the analysis

remains the same—the defendant must be able to point to a non-speculative estimate of the value of the injunction to the plaintiff.

## IV. CONCLUSION

Because it lacks subject-matter jurisdiction, the Court **ORDERS** that this action be **REMANDED** to the Superior Court of Cobb County, Georgia, and this civil action be **CLOSED**.

**IT IS SO ORDERED** this 14th day of October, 2020.

s/Steve C. Jones
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**